# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TINA MICHELLE BRAUNSTEIN, | Civil Case No. 1:16-cv-08879 (VSB) |
| Plaintiff, | |
| -against- | |
| SAHARA PLAZA, LLC and THE PLAZA HOTEL, a FAIRMONT MANAGED HOTEL, | (Electronically Filed Document) |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

---

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102
(973) 643-7000
Attorneys for Defendants
*Sahara Plaza, LLC and Fairmont Hotels & Resorts (Maryland) LLC*

*Of Counsel:*
  David I. Rosen, Esq.

*On the Brief:*
  A. Sonu Ray, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

STANDARD FOR GRANTING SUMMARY JUDGMENT ....................................... 3

ARGUMENT ......................................................................................................... 5

    I.    THE FIRST CAUSE OF ACTION MUST BE DISMISSED, BECAUSE PLAINTIFF CAN NEITHER MEET HER PRIMA FACIE BURDEN NOR ESTABLISH THAT DEFENDANTS' ARTICULATED REASONS FOR HER TERMINATION WERE A PRETEXT FOR GENDER OR ETHNICITY DISCRIMINATION ..................................................................... 5

        A.    Plaintiff  Has Not Satisfied the Applicable Discrimination Claim Standards ................................................................. 5

        B.    Plaintiff Cannot Establish a Prima Facie Case Because She Cannot Demonstrate that She Performed Her Job Satisfactorily ................................................................. 7

        C.    Ms. Braunstein Has Produced No Discriminatory "Inference" Evidence, Which Is Necessary To Satisfy Her Prima Facie Burden ....................................................... 9

            1.    Plaintiff's allegations are wholly uncorroborated and do not establish a link to a discriminatory animus........... 10

            2.    The "same actor" inference refutes Plaintiff's claims ............................................................. 13

        D.    Ms. Braunstein Has Produced No Evidence that Defendants' Articulated Reasons for Her Termination Were Pretextual ................................................................. 14

    II.    THE FIRST CAUSE OF ACTION, TO THE EXTENT IT ALLEGES "ETHNICITY" DISCRIMINATION UNDER TITLE VII, AND THE SEVENTH CAUSE OF ACTION, WHICH ALLEGES AGE DISCRIMINATION UNDER THE ADEA, MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, BECAUSE PLAINTIFF'S ETHNICITY AND AGE CLAIMS DO NOT REASONABLY RELATE TO HER EEOC CHARGE ..................................... 16

# TABLE OF CONTENTS

(continued)

**Page**

III   THE SECOND CAUSE OF ACTION, ALLEGING HOSTILE WORK ENVIRONMENT, MUST BE DISMISSED BECAUSE, UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE INCIDENTS AND CONDUCT CHALLENGED BY PLAINTIFF WERE NOT OBJECTIVELY PERVASIVE OR SEVERE TO ALTER THE CONDITIONS OF PLAINTIFF'S EMPLOYMENT ........................................... 18

IV.   THE THIRD CAUSE OF ACTION, ALLEGING RETALIATION, MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT PRODUCED ANY PROBATIVE EVIDENCE OF A "CAUSAL CONNECTION" BETWEEN HER TERMINATION AND ANY INTERNAL COMPLAINTS ABOUT STAFF THAT SHE RAISED .............. 20

    A.   Plaintiff Does Not Meet the Applicable Retaliation Claim Standards ................................................................................... 20

    B.   Plaintiff Has Produced No Evidence Establishing A Causal Connection Between Any Alleged "Materially Adverse Employment Action" She Suffered And The So-Called "Discrimination" Claims She Raised .......................................... 21

V   PLAINTIFF'S FOURTH CAUSE OF ACTION, SOUNDING IN NEGLIGENCE, MUST BE DISMISSED BECAUSE IT IS PREEMPTED BY THE WORKER'S COMPENSATION LAW .............................................. 22

VI   PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT DEFENDANTS INVESTIGATED PLAINTIFF'S CLAIMS ............................ 23

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alfano v. Costello,*
 294 F.3d 365 (2d Cir. 2002)..................................................................................16

*Anderson v. Liberty Lobby,*
 477 U.S. 242 (1986)........................................................................................3, 4

*BellSouth Telecomms. V. W.R. Grace & Co.,*
 77 F.3d 603 (2d Cir. 1996)..................................................................................4

*Brennan v. Metro. Opera Ass'n,*
 192 F.3d 310 (2d Cir. 1999)................................................................................18

*Butts v. City of New York Dep't of Hous. Pres. & Dev.,*
 990 F.2d 1397 (2d Cir. 1992)..............................................................................17

*Campbell v. Alliance Nat'l Inc.,*
 107 F. Supp. 2d 234 (S.D.N.Y. 2000)...........................................................12, 13

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986)............................................................................................3

*Cianciosi v. Home Depot U.S.A., Inc.,*
 1999 WL 1024119 (2d Cir. Oct. 28, 1999).........................................................9

*Clerge v. Edison,*
 1999 U.S. Dist. LEXIS 5811, No. 95 Civ. 9072, 1999 WL 239688 (S.D.N.Y.
 Apr. 23, 1999)......................................................................................................21

*Council v. Tri-Star Construction Company,*
 No. 01 Civ. 11788, 2004 U.S. Dist. Lexis 1921, 2004 WL 253298 (S.D.N.Y.
 Feb. 10, 2004).....................................................................................................13

*Cunningham v. Consol. Edison Inc.,*
 2006 U.S. Dist. LEXIS 22482, 2006 WL 842914 (E.D.N.Y. Mar. 28, 2006).........17

*Del Franco v. New York City Off-Track Betting Corp.,*
 429 F.Supp.2d 529 (E.D.N.Y. 2006), *aff'd,* 245 Fed. Appx. 42 (2d Cir. 2007) ....17

*DiCola v. SwissRe Holding,*
 996 F.2d 30 (2d Cir. 1993)...................................................................................6

*Fay v. Oxford Health Plan*,
  287 F.3d 91 (2d Cir. 2002).................................................................................3

*Ferris v. Delta Air Lines, Inc* .,
  277 F.3d 128 (2d Cir. 2001)...............................................................................22

*Gayle v. Gonyea*,
  313 F.3d 677 (2d Cir. 2002)................................................................................3

*Genao v. Avon Salon & Spa*,
  2008 U.S. Dist. LEXIS 3809, 2008 WL 190605 (S.D.N.Y. Jan. 9, 2008) ............13

*Grady v. Affiliated Central, Inc.*,
  130 F.3d 553 (2d Cir. 1997)...............................................................................13

*Hawana v. City of New York*,
  230 F. Supp. 2d 518 (S.D.N.Y. 2002)................................................................12

*Henry v. Wyeth Pharms., Inc.*,
  616 F.3d 134 (2d Cir. 2010)...............................................................................10

*Hollander v. American Cyanamid Co.*,
  894 F.2d 80 (2d Cir. 1990).................................................................................21

*Holtz v. Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2003).................................................................................17

*Hu v. UGL Servs. Unicco Operations Co.*,
  No. 13-Civ-4251, 2014 U.S. Dist. LEXIS 145552, 2014 WL 5042150
  (S.D.N.Y. Oct. 9, 2014) ......................................................................................5

*Katz v. Beth Israel Medical Center*,
  2001 U.S. Dist. LEXIS 29, 2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ...................17

*Kessler v. Westchester County Dep't of Soc. Servs.*,
  461 F.3d 199 (2d Cir. 2006)...............................................................................21

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
  274 F.3d 683 (2d Cir. 2001)...............................................................................16

*Love v. City of N.Y. Dep't of Consumer Affairs*,
  390 F. Supp.2d 362 (S.D.N.Y. 2005)..................................................................18

*Mario v. P & C Food Markets, Inc.*,
  313 F.3d 758 (2d Cir. 2002)................................................................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................3

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).............................................................................................5

*Ming Yen Hou v. N.Y. City Dep't of Envtl. Prot.*,
  321 Fed. Appx. 60 (2d Cir. 2009)......................................................................6

*Patterson v. County of Oneida*,
  375 F.3d 206 (2d Cir. 2004).............................................................................18

*Salahuddin v. Coughlin*,
  781 F.2d 24 (2d Cir. 1986).................................................................................4

*Schnabel v Abramson*,
  232 F3d 83 (2d Cir 2000)..................................................................................13

*SEC v. Mattera*,
  No. 11 Civ. 8323, 2013 U.S. Dist. LEXIS 174163, 2013 WL 6485949
  (S.D.N.Y. Dec. 6, 2013)......................................................................................4

*Taylor v. Abercrombie & Fitch Stores, Inc.*,
  No. 08-CV-3264, 2010 U.S. Dist. LEXIS 110519, 2010 WL 4168631
  (E.D.N.Y. Oct. 18, 2010)...............................................................................20, 21

*Terry v. Ashcroft*,
  336 F.3d 128 (2d Cir. 2003)...........................................................................5, 20

*Texas Dep't of Comty. Affairs v. Burdine*,
  450 U.S. 248 (1981).............................................................................................5

*Tomassi v. Isignia Fin. Grp., Inc.*,
  479 F.3d 111 (2d Cir. 2007).............................................................................10

*Ulrich v. Moody's Corp.*, No. 13-cv-8 (VSB), 2017 WL 1232709 (S.D.N.Y.
  March 31, 2017) *aff'd*, 2018 WL 357539 (2d Cir. Jan. 11, 2018)...................3, 4

*Varughese v. Mount Sinai Med. Ctr.*,
  No. 12 Civ. 8812, 2015 U.S. Dist. LEXIS 43758, 2015 WL 1499618
  (S.D.N.Y. March 27, 2015)..................................................................................3

**STATE CASES**

*Ferrante v. American Lung Ass'n*,
  90 N.Y.2d 623 (1997)...................................................................................5fn. 2

*Martinez v. Canteen Vending Servs. Roux Fine Dining Chartwheel*,
  18 A.D.3d 274 (1st Dep't 2005)........................................................................23

*McGrath v. Toys "R" Us, Inc.*,
  3 N.Y.3d 421, 788 N.Y.S.2d 281 (2004) ......................................................... 5fn. 2

**FEDERAL STATUTES**

Age Discrimination in Employment Act of 1967 ................................................16, 17

Title VII of the Civil Rights Act of 1964........................................................ *passim*

**STATE STATUTES**

New York Workers' Compensation Law §§ 11 and 29(6) ....................................22, 23

**RULES**

Fed. R. Civ. P. 56(c) ....................................................................................................3

Local Rule 56.1 ............................................................................................................3

## PRELIMINARY STATEMENT

Defendants Sahara Plaza, LLC ("Sahara" or the "Hotel") and Fairmont Hotels & Resorts (Maryland) LLC (incorrectly identified in the Complaint as "The Plaza Hotel, a Fairmont Managed Hotel") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment seeking dismissal in its entirety of the Complaint filed by Plaintiff Tina Michelle Braunstein ("Plaintiff" or "Ms. Braunstein").

The Complaint consists of Seven Causes of Action:

- The First alleges that Defendants discriminated against Plaintiff on the basis of her gender and ethnicity, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and "New York law."

- The Second alleges that Defendants created an "intimidating, hostile and offensive work environment in violation of Title VII and "New York law." [1]

- The Third alleges that Defendants retaliated against Plaintiff, in violation of Title VII and "New York law."

- The Fourth alleges that Defendants violated their common law duties by engaging in "Negligent Supervision."

- The Fifth, though entitled "Violation of NYC HRL," solely alleges that Defendants violated New York State Human Rights Law ("NYSHRL") § 296(3)(a) by failing to act on Plaintiff's claims of discrimination, harassment and hostile work environment.

---

[1] Plaintiff's counsel conceded in his letter to the Court dated October 4, 2017 that with respect to her hostile work environment claim, "Plaintiff does not put forth allegations of sexual harassment because with her personality they wouldn't dare." (Declaration of David I. Rosen dated March 14, 2018 ("Rosen Decl."), Ex. 9, ECF Doc. No. 22). At the Pre-Motion Conference on October 6, 2017 ("Pre-Motion Conference"), Plaintiff's counsel clarified that the actors in the phrase, "*they* wouldn't dare," referred to representatives of Defendants (Rosen Decl., Ex. 4, at 20:03-08) (emphasis added), and that her hostile work environment claim was based solely on alleged gender-biased comments and physical activities that were not sexual in nature. (*Id.* at 21:22-22:22).

1

- The Sixth, though entitled "Violation of NYCHRL Title 8 of the Administrative Code of the City of New York § 8-107," solely alleges that Defendants violated NYSHRL § 296(3)(a) by failing to act on Plaintiff's claims of discrimination, harassment and hostile work environment, which is the same allegation she made in the Fifth Cause of Action.

- The Seventh alleges that Plaintiff, 47 years of age, was terminated because of her age, in violation of the Age Discrimination in Employment Act ("ADEA").

For the reasons explained in detail below, summary judgment should be granted to Defendants because there are no genuine issues of material fact to be tried with respect to any of the foregoing causes of action, and Defendants are entitled to judgment as a matter of law.

It is noteworthy that during the past 15 years, Ms. Braunstein has been involuntarily terminated by *six different employers* (including Sahara). (*See* Defendants' Local Rule 56.1 Statement of Undisputed Facts, ¶ 43). And prior to commencing employment with the Hotel, Ms. Braunstein filed, individually or as a co-plaintiff, at least three other federal court civil actions against her previous employers; in two of those actions, Plaintiff asserted claims of gender-based discrimination and retaliation following her terminations. (*See id.*, ¶ 44). After being terminated by Sahara before completing her probationary period due to well-documented performance issues, Plaintiff, as part of this continuing pattern of suing her former employers, commenced this action against Defendants alleging discrimination and retaliation as the cause of her employment loss. This action has no more merit than her previous ones.

2

## STATEMENT OF FACTS

Defendants respectfully refer the Court's attention to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts as to Which There Is No Genuine Issue to be Tried ("Defs.' 56.1"), which summarizes the facts relevant to the instant motion and the evidentiary support for same.  Other relevant facts are discussed within the body of the Argument.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is warranted "when the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ulrich v. Moody's Corp.*, No. 13-cv-8 (VSB), 2017 WL 1232709, at *10 (S.D.N.Y. March 31, 2017) (citing *Fay v. Oxford Health Plan*, 287 F.3d 91, 2013 (2d Cir. 2002)), *aff'd*, 2018 WL 357539 (2d Cir. Jan. 11, 2018); *see also* Fed. R. Civ. P. 56(c).  "An issue of fact is genuine only 'if the evidence is such that a jury could return a verdict for the nonmoving party.'"  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)).  Summary judgment provides a procedure whereby unfounded claims—such as those asserted in the instant action—can be eliminated without recourse to a costly, time-consuming and unnecessary trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

To defeat this summary judgment motion, Plaintiff must raise a genuine issue of material fact and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Moody's Corp.*, 2017 WL 1232709, at *10 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586,  (1986)).  "The fact that [Plaintiff] is proceeding pro se does not otherwise relieve [her] from the usual requirements of summary judgment." *Id.* at *32 (citations omitted); *see Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812, 2015 U.S. Dist. LEXIS 43758, *9-10, 2015 WL 1499618, at *4 (S.D.N.Y. March 27, 2015) ("Even a *pro se* party 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but

3

instead must offer evidence to show that [her] versions of the events are not wholly fanciful."). Indeed, "'[t]he summary judgment stage is an appropriate juncture to identify the real issues in a case,' even where a party proceeds *pro se*." *SEC v. Mattera*, No. 11 Civ. 8323, 2013 U.S. Dist. LEXIS 174163, at *16, 2013 WL 6485949, at *6 (S.D.N.Y. Dec. 9, 2013) (quoting *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986)).

A fact is not disputed "simply because [Plaintiff] conclusorily proclaims it to be so if the underlying evidence clearly contradicts that assertion." *Moody's Corp.*, 2017 WL 1232709, at *10 (citing *BellSouth Telecomms. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem.*, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

**ARGUMENT**

**I.**

**THE FIRST CAUSE OF ACTION MUST BE DISMISSED, BECAUSE PLAINTIFF CAN NEITHER MEET HER *PRIMA FACIE* BURDEN NOR ESTABLISH THAT DEFENDANTS' ARTICULATED REASONS FOR HER TERMINATION WERE A PRETEXT FOR GENDER OR ETHNICITY DISCRIMINATION**

**A.**         **bmankovet/temp87**

At the summary judgment stage, the Second Circuit analyzes Title VII claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and *Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). Under this framework, Plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination. To do so, Plaintiff must show that (1) she belongs to a protected class; (2) she was performing her job satisfactorily; (3) she was discharged; and (4) her discharge occurred under circumstances giving rise to an inference of discrimination on the basis of her gender or ethnicity. *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 767 (2d Cir. 2002).[2]

If Plaintiff carries her *prima facie* burden, which she cannot, Defendants then need only "offer a legitimate, non-discriminatory rationale for [their] actions.'" *Id*. (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). Defendants have succeeded in doing so by offering evidence that Plaintiff's termination was based on her poor work performance. *See, e.g., Hu v. UGL Servs. Unicco Operations Co.*, No. 13 Civ. 4251, 2014 U.S. Dist. LEXIS 145552, at *13-

---

[2]  To the extent that the claims alleged in the First Cause of Action arise under the NYSHRL, the *McDonnell-Douglas/Burdine* standards applicable to Title VII claims equally apply. *See McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 429, 788 N.Y.S.2d 281, 284 (2004) (federal burden-shifting standards apply to claims brought under the NYSHRL); *Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629-31 (1997) ("The standards for recovery under [the NYSHRL] are in accord with Federal standards under [T]itle VII. . . .").

14, 2014 WL 5042150, at *5 (S.D.N.Y. Oct. 9, 2014) (plaintiff's undisputed and documented failures to adhere to policies and procedures sufficient to establish legitimate, nondiscriminatory reason).   Defendants are merely required to articulate, but not prove, a legitimate, non-discriminatory reason for its employment action.   The burden is one of production, not persuasion, and it is not onerous.   *See Fisher*, 114 F.3 at 1335-36 ("Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. Thus, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons'"); *Davis*, 1997 WL 655935, at *8 ("In order to explain its conduct in a satisfactory manner, defendant need only articulate a legitimate non-discriminatory reason."); *DiCola v. SwissRe Holding*, 996 F.2d 30, 32 (2d Cir. 1993).

Once Defendants are able to make such a showing, which is easily met here, Plaintiff has the burden to "present sufficient evidence that the employer's proffered reason is a pretext for an impermissible motivation." *Ming Yen Hou v. N.Y. City Dep't of Envtl. Prot.*, 321 Fed. Appx. 60, 62 (2d Cir. 2009).   Plaintiff's evidence must "'permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Aulicino*, 580 F.3d at 80 (internal quotation marks omitted).

d       Eliana102

evidence that the reasons given for her termination were pretextual.[3]

---

[3]   To the extent the Court considers the viability of Plaintiff's claims under the New York City Human Rights Law ("NYCHRL"), Plaintiff fails to meet that law's standards.   The NYCHRL imposes vicarious liability upon employers only where (1) the employee or agent exercised managerial or supervisory responsibility; (2) the employer "knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action"; or (3) the employer "should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence or prevent such discriminatory conduct." *Zakrzewska v. New York*, 14 N.Y.3d 469, 477 (2010) (citing NYCHRL, § 8-107).   Plaintiff has accused, among others, her co-worker Edmund McSloy of discrimination, but he is not a manager or supervisor. With respect to her allegations against the supervisors and/or managers, the record contains abundant evidence that Defendants took prompt remedial action and exercised reasonable diligence to address all internal complaints by Ms. Braunstein.   (Defs.' 56.1, ¶¶ 12-14, 18, 20, 29-32, 35).   Indeed, Evan Hunt ("Mr. Hunt"), then

**B.      Plaintiff Cannot Establish a *Prima Facie* Case Because She Cannot Demonstrate that She Performed Her Job Satisfactorily**

At her deposition, Ms. Braunstein acknowledged that, among other requirements, her position required the following:   must have "[e]xcellent communication . . . skills," "strong interpersonal . . . abilities," and the "ability to work cohesively with fellow colleagues as part of a team."   (Defs.' 56.1, ¶ 2; Rosen Decl., Ex. 1, 139:14-20; 145:1-14; 146:14-20).   Ms. Braunstein's performance deficiencies are well-documented.   Nevertheless, Ms. Braunstein asks the Court to ignore the record evidence and find that she was discharged because of her gender and ethnicity.   Ms. Braunstein fails to show that she performed her job satisfactorily.   Despite repeated counseling, meetings, and a highly critical written performance evaluation, Ms. Braunstein demonstrated continued unacceptable workplace conduct throughout her employment at the Hotel:

- On December 10, 2014, Edmund McSloy ("Mr. McSloy"), a fellow bartender, said that Ms. Braunstein was very hostile and aggressive.  (Defs.' 56.1, ¶ 15; Affidavit of Karen Wenger dated March 13, 2018 ("Wenger Aff."), Ex. H).

- When Mr. McSloy asked Ms. Braunstein to take the order of two guests, Mr. McSloy reported that Ms. Braunstein threatened him and said words to the effect, "You don't know who you are messing with, go fuck yourself" and that she "has an uncle who is an attorney." (Defs.' 56.1, ¶ 15; Wenger Aff., Ex. H).

- According to Edwin Marini ("Mr. Marini"), another fellow bartender, Ms. Braunstein "was aggressive, bossy and used foul language" and had not been getting along with the other staff members. (Defs.' 56.1, ¶ 16; Wenger Aff. Ex. H).

- On December 13, 2014, Johann Widnersson ("Mr. Widnersson") reported an incident involving an argument with Ms. Braunstein to Mr. Hunt, then the Hotel's Assistant Director of Human Resources, and Martin Mariano ("Mr. Mariano").  (Defs.' 56.1, ¶ 17; Wenger Aff. Ex. I). Mr. Widnersson wrote in that email: "It was a bizarre argue [sic] and her aggressiveness occurred from nowhere."  (Defs.' 56.1, ¶ 17; Wenger Aff. Ex. I).  Mr. Widersson noted that he "[doesn't] consider [Ms. Braunstein] a good

---

the Assistant Director of Human Resources, testified that each of Plaintiff's complaints were thoroughly investigated.  (*See* Rosen Decl., Ex. 3, at 36:25-40:14).   In fact, during these investigations Defendants discovered that several of Plaintiff's male and female colleagues were alleging that *they were victims of bullying by Plaintiff*.  (*See id.* at 39:19-40:3; 46:15-47:6).

team player, and her negative attitude effects the entire team" and that "[i]t feels like she is looking for trouble. I do also believe that her colleagues find it hard to work with her due to the above mentioned." (Defs.' 56.1, ¶ 17; Wenger Aff. Ex. I).

- On December 18, 2014, Mr. Mariano met with Ms. Braunstein concerning her performance and attitude issues, in the presence of the union delegate and Mr. Widersson. (Defs.' 56.1, ¶ 18; Wenger Aff. Ex. J).

- Per Ms. Braunstein's written performance appraisal dated January 9, 2015, Mr. Widnersson checked the "NO" box with respect to each of the following behaviors: respect for others, professionalism, quality of work, productivity, positive attitude, cooperative, accepts responsibility, reliability, attendance and punctuality, team player, and leadership. Mr. Widnersson rated Ms. Braunstein's overall performance on that appraisal as "Below." (Defs.' 56.1, ¶ 21; Wenger Aff. Ex. L).

- On January 12, 2015, Ms. Braunstein sent an angry email to Mr. Widnersson, despite Mr. Mariano's instructions to her to raise her concerns with Mr. Mariano directly. Mr. Mariano counseled Ms. Braunstein, informed her that her email was disrespectful in tone, and again asked Ms. Braunstein to refrain from sending such emails and instead speak with Mr. Mariano in person to discuss the review. (Defs.' 56.1, ¶¶ 24-26, 29; Wenger Aff., Ex. O).[4]

- Roberto Rosa ("Mr. Rosa"), a fellow bartender at the Hotel, repeatedly complained to management, both verbally and in writing, about "continued harassment by [Ms.] Braunstein" against him for "almost 5 months." (Defs.' 56.1, ¶¶ 23, 37-38; Wenger Aff., Exs. N, S, T). Mr. Rosa reported that he "was upset about the treatment he [had] been getting from Tina" and felt "very unsupported by Tina as a co-worker." (Defs.' 56.1, ¶ 24; Wenger Aff., Ex. N). He further complained Ms. Braunstein was "bossy and aggressive," "put [him] and others down," and caused him stress and anxiety, which "started affecting [his] ability to perform [his] job." (Defs.' 56.1, ¶¶ 24, 36-37; Wenger Aff., Exs. N, S, T). Mr. Rosa also complained to his manager that Ms. Braunstein created an unacceptable working environment, was condescending and insulting to him, and "picked on" and belittled him on a daily basis, and stated that he "wasn't worthy to work the bar." (Defs.' 56.1, ¶¶ 36-37; Wenger Aff., Exs. S, T). He also complained that Ms. Braunstein called him a "schmuck" and demeaned him in front of a guest. (Defs.' 56.1, ¶ 36; Wenger Aff. Ex. S).

- Three female servers complained that Ms. Braunstein had "made derogatory remarks about them to the manager in a loud enough voice that they could hear [her]." (Defs.' 56.1, ¶ 36; Wenger Aff., Ex. R). Mr. Mariano advised Ms. Braunstein of these complaints, and wrote, "Please use caution when discussing your coworkers with the management. I am always happy to facilitate a meeting regarding professional behavior." (Defs.' 56.1, ¶ 35; Wenger Aff., Ex. R).

---

[4]   Notably, Plaintiff did not state in that email that she felt the performance review she received discriminated against her based on any of her protected characteristics. (Defs.' 56.1, ¶ 27; *see* Wenger Aff. Ex. O).

By her own admission, Ms. Braunstein (i) has a strong personality, (ii) has a personality that others occasionally find offensive, (iii) has "absolutely" had disagreements with co-workers, (iv) was sure that arguments between her and her co-workers have happened, (iv) is a person who at times has an "edge" in her voice, (v) told Mr. Mariano during one of their conversations that she was "someone with an edge," and that she was referring to her "personality," (vi) "absolutely" has a strong personality because she is from New York.  (Defs.' 56.1, ¶ 34; Rosen Decl., Ex. 1, 86:2-8; 86:12-24; 87:3-14; *see also* Rosen Decl., Ex. 5).  The record confirms that Ms. Braunstein engaged in numerous arguments with her co-workers and was viewed by both male and female coworkers alike as offensive and a bully.  (Defs.' 56.1, ¶¶ 15-17, 23, 35-37; Wenger Aff., Exs. H, I, N, R, S, T; Rosen Decl., Ex. 2, at 180:20-181:16; Rosen Decl., Ex. 3, at 39:19-40:14; 46:15-47:6).

### C.    Ms. Braunstein Has Produced No Discriminatory "Inference" Evidence, Which Is Necessary To Satisfy Her *Prima Facie* Burden

Ms. Braunstein also cannot satisfy the fourth element of a *prima facie* case of gender and/or ethnicity discrimination because the record does not contain any evidence that would give rise to an inference that her termination was the product of either gender-based or ethnicity-based discrimination.  *See Brown v. Northrop Grumman Corp.*, 2014 U.S. Dist. LEXIS 11618, 2014 WL 4175795, at *16-18 ("'[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.'") (internal quotations and citation omitted).  Plaintiff "cannot raise an inference of discrimination without some evidence of discriminatory motive or disparate treatment on the basis of membership in a protected class." *Cianciosi v. Home Depot U.S.A., Inc.*, 1999 WL 1024119 (2d Cir. Oct. 28, 1999) (granting summary judgment on plaintiff's Title

VII and NYSHRL claims finding plaintiff's allegations that she was transferred due to her gender did not raise an inference of sex discrimination).

### 1. Plaintiff's allegations are wholly uncorroborated and do not establish a link to a discriminatory animus.

Plaintiff's allegations regarding stray comments are insufficient to raise an inference of discrimination on the basis of gender or ethnicity. In determining whether a remark is probative of discriminatory intent, courts in the Second Circuit consider four factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc*., 616 F.3d 134, 149 (2d Cir. 2010) (collecting cases). "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Id.* (quoting *Tomassi v. Isignia Fin. Grp., Inc.*, 479 F.3d 111, 115 (2d Cir. 2007) (internal quotation marks omitted).

In *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, the plaintiff, a school district employee, alleged that several purportedly discriminatory comments were made by both an assistant superintendent and plaintiff's supervisor, who had submitted performance evaluations for the plaintiff. The court held that her discrimination claims failed because, *inter alia*, there was no evidence that the discriminatory comments were related to the decision-making process regarding the adverse employment action (denial of tenure), and thus, the comments did not constitute sufficient evidence to support an inference of discrimination. 973 F.Supp. 2d 386, 399 (S.D.N.Y. 2013). Likewise, Plaintiff has attempted to support her gender discrimination claim by alleging that the following comments were made to her: during a meeting with Plaintiff, Mr.

10

Mariano "referred to [her] as a bitch and spelled it out"[5] (Rosen Decl., Ex. 1, at 96:13-25); Mr. Deroui called her a bitch on "at least a couple of occasions" and stated "grow up and stop being such a baby" on one occasion (*id.* at 101:8-15); Mr. Deroui referred to Plaintiff as a "bar back", which Plaintiff admitted was "just a person who supports a bartender" (*id.* at 101:12-18); Mr. Deroui "made a comment about Jews owning the banks and the media," a comment that Plaintiff did not allege was specifically directed at her or to her work (*id.* at 101:19-23); and Mr. McSloy, a morning bartender, on a single occasion purportedly prevented Plaintiff from setting up for her afternoon/evening shift and yelled at her (*id.* at 116:21-117:7). Plaintiff also alleged that Mr. Widnersson's "general reaction" to her was "misogynistic," and when asked to explain this vague allegation, Plaintiff offered the following ambiguous explanation: "If I said something

---

[5]   Without Mr. Mariano's knowledge and consent, Plaintiff secretly recorded this meeting on January 15, 2015 on her iPhone. (Defs.' 56.1, ¶ 32; Rosen Decl., Ex. 5). During discovery, Plaintiff produced this recording, which revealed that Mr. Mariano spelled out the word "bitch" in the context of working with Plaintiff to help her overcome her performance deficiencies and facilitate better relationships with her colleagues, including her female colleagues; the transcript clarifies that Mr. Mariano was not spelling out the term in a derogatory manner. (Defs.' 56.1, ¶ 32; Rosen Decl., ¶ 7, Ex. 5). The transcript also reveals that Plaintiff even complained that management treated female employees *favorably*. At her deposition, Plaintiff admitted that when Mr. Mariano spoke with her, he never raised his voice to her and listened to what she had to say. (Defs.' 56.1, ¶ 33; Rosen Decl., Ex. 1, 170:1-7). The following is an excerpt of the relevant portion of the uncertified transcript of the recording:

> Plaintiff: ". . . That said, I've pointed out that the girls are very rude and snappish. . . . I've brought it up again and again, with [Mr. Widnersson], the girls, they could, they walk on water. . . . And I'm a strong woman, and yeah when people say stuff to me, I'm going to be always professional. But you better believe that there's going to be an edge in my voice. And I know that. I own that. I'm 20 years in this industry. I'm a native New Yorker . . . But in this situation, in this house here, I'm not respected, I'm not valued for it . . . ."

> Mr. Mariano: "So how do we change that? Do you think we should all have a meeting and we should all be candid with each other . . . . We're a team, we need to work together. . . . Maybe we need to have a department meeting where we workshop with each other and really get to know each other. *There's going to be days where you're going to be a B-I-T-C-H and there's going to be days where they're [referring to the female servers] going to be anxious and flip out and you need to be able to calm them down and get them what they need and not taking things personally so that they don't reflect of an image of you that may not be fully accurate.*"

> Plaintiff: "Yeah and my only thing is, and this may sound a little obnoxious, but I'm just going to own it, this image has worked my whole career for 20 years."

(Defs.' 56.1, ¶ 32; Rosen Decl., ¶ 7, Ex. 5) (emphasis added).

specific like the sky is blue, he would argue with me." (*Id.* at 104:24-105:6). Even taking Plaintiff's allegations as true, there is no evidence that the comments demonstrated a discriminatory animus, were made in relation to Plaintiff's termination, or that they related in any way to the termination decision-making process. *See, e.g.*, *Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d at 400; *Hawana v. City of New York*, 230 F. Supp. 518, 527 (S.D.N.Y. 2002) (holding that a single "stray remark" did not satisfy the fourth prong of a prima facie case); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight. . . .").

Ms. Braunstein has repeatedly accused Defendants and their representatives of being "misogynistic" and has asserted baseless allegations that they have engaged in gender discrimination. (*See* Defs.' 56.1, ¶ 19; Rosen Decl., Ex. 1, at 168:21-25; 198:16-199:9; 234:22-236:2). However, the record reflects that Ms. Braunstein's colleagues, both male and female, viewed her as "bossy and aggressive," "condescending or outright insulting," and even complained that Ms. Braunstein herself harassed and bullied members of the staff. (Defs.' 56.1, ¶¶ 15-17, 23, 35-37; Wenger Aff., Exs. H, I, N, R, S, T; Rosen Decl., Ex. 2, at 180:20-181:16; Rosen Decl., Ex. 3, at 39:19-40:14; 46:15-47:6). Such reports from her male and female coworkers led to her ultimate termination within the probationary period, and further undercut any inference of gender discrimination.

An inference of discrimination is equally absent with respect to Ms. Braunstein's ethnicity-based claim. The only evidence Ms. Braunstein provides to support this claim is her allegation that she overheard a comment made by Mr. Deroui about "Jews owning the banks and media." (Rosen Decl., Ex 1, at 101:19-23). She neither alleges that this comment was

specifically directed at her nor to her work.   Discrimination cannot be inferred from this vague and isolated comment.   *See, e.g.*, *Genao v. Avon Salon & Spa*, No. 01 Civ. 11788, 2008 WL 190605, at \*2, 6 (S.D.N.Y. Jan. 16, 2008) (holding that allegation of an ethnically-based remark, "Don't give that fucking bitch Eleana any blow dries, these fucking Latinos are going to bring this place down," constituted a stray remark insufficient to support an inference of discrimination) (internal citations omitted).

### 2.      The "same actor" inference refutes Plaintiff's claims.

The Second Circuit recognizes that where the "same actor" (*i.e.*, where the same person) made the decision to hire and fire, this "strongly suggest[s] that invidious discrimination was unlikely." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (affirming summary judgment of age discrimination claim where hirer and firer were same person); *see also Schnabel v Abramson*, 232 F3d 83 (2d Cir. 2000) (affirming summary judgment for employer where same manager hired and fired plaintiff, after recognizing that discriminatory motivation would be inconsistent with manager's decision to hire).   This Court holds that the "same actor inference remains significant" in refuting a discrimination claim, where the period between an employee's commencement of employment and termination date is under two years.   *See Council v. Tri-Star Construction Company*, No. 01 Civ. 11788, 2004 U.S. Dist. Lexis 1921, 2004 WL 253298, at \*3 (S.D.N.Y. Feb. 10, 2004) (13 months); *Campbell v. Alliance National Incorporated*, 107 F. Supp. 2d 234, 248-249 (S.D.N.Y. 2000) (9 months).

Plaintiff was employed for less than five months by the Hotel.   According to Plaintiff's testimony, Mr. Mariano interviewed her for the bartender position.   (Rosen Decl., Ex. 1, 125:4-10).   Mr. Mariano testified that he participated in the hiring of Plaintiff and was one of the decision-makers who had input into the decision to terminate Plaintiff's employment during her probationary period.   (*Id.*, Ex. 2, at 91:21-23; 239:14-20).   The record evidence is replete with

13

evidence of Mr. Mariano's favorable treatment towards Plaintiff and good personal relationship with Plaintiff during her employment at the Hotel. (*Id.*, Ex. 2, at 239:17-242:7; 245:17-246:8; *see generally id.*, Ex. 5). For example, Mr. Mariano regularly met with and/or discussed Plaintiff's progress, performance, and potential for growth at the Hotel. (*See id.*, Ex. 5; *see also* Defs.' 56.1, ¶¶ 29-33, 35). Plaintiff characterized her relationship with Mr. Mariano as "good." (Rosen Decl., Ex 1, 95:8-10). Plaintiff testified that she never accused him of being biased against female employees. (*Id.* at 97:24-98:1). Accordingly, Plaintiff's suggestion that Mr. Mariano, in participating in the decision to terminate Plaintiff, was motivated by her gender and ethnicity defies common sense.

> **D.** **Ms. Braunstein Has Produced No Evidence that Defendants' Articulated Reasons for Her Termination Were Pretextual**

Even if Ms. Braunstein is deemed to have met her *prima facie* burden, she has failed to adduce evidence that Defendants' articulated reasons for her termination were not legitimate but rather were a pretext for discrimination.

Plaintiff's position was covered under the terms and conditions of a collective bargaining agreement ("CBA") between the Hotel & Motel Trades Council (the "Union"), a labor organization, and the Hotel Association of New York City, a multi-employer bargaining agent representing numerous hotels, including the Hotel. (Defs.' 56.1, ¶ 3). The Hotel and the Union also were parties to a separate agreement which modified the CBA with respect to the operation of the Restaurant (the "Palm Court Agreement"). (*Id.*, ¶ 4). Plaintiff was hired during the Restaurant's first year of operation. (*Id.*, ¶ 5). Pursuant to Section 2, paragraph h., of the Palm Court Agreement, "For the first one (1) year of operation, the probationary period for new hires shall be one hundred fifty (150) days." (*Id.*). The Hotel had the authority under the CBA to

terminate Plaintiff's probationary period employment without affording her the right to contest her termination under the grievance and arbitration provisions of the CBA. (*Id.*).

Ms. Braunstein was told that she had not successfully completed her probationary period. (*Id.*, ¶ 38)  The record contains abundant evidence regarding her negative attitude, bullying behavior towards her coworkers, and inability to meet performance expectations. (Defs.' 56.1, ¶¶ 15-17, 23, 35-37; Wenger Aff., Exs. H, I, N, R, S, T; Rosen Decl., Ex. 2, at 180:20-181:16; Rosen Decl., Ex. 3, at 39:19-40:14; 46:15-47:6).  There is no evidence reflecting that she was terminated for any other reason.

In Plaintiff's counsel's letter to the Court dated October 4, 2017, he stated that Plaintiff's position is that "she was never informed of any probationary period and was only shown the CBA at her deposition." (Rosen Decl., Ex. 9; ECF Doc. No. 22).  While the relevance of this statement is dubious at best, the factual assertion itself is patently false.  In the statement Plaintiff attached to her Charge of Discrimination (the "Charge") before the Equal Employment Opportunity Commission ("EEOC"), which she signed on February 8, 2016, Ms. Braunstein readily acknowledged that "[u]pon hiring, we were told we had to complete a five-month probation period." (Defs.' 56.1, ¶ 41).  The argument that Ms. Braunstein was unaware of the five-month probationary period is belied by her own written statement.  Furthermore, Plaintiff's offer letter, which was signed by Ms. Braunstein, states on the first page, "The work you will do is covered by an existing collective bargaining agreement between the Plaza and the New York Hotel and Motel Trades Council, AFL-CIO." (*Id.*, ¶ 6).

Plaintiff also admitted at her deposition that she never accused Mr. Mariano of being biased against female employees. (*See* Rosen Decl., Ex 1, 97:24-98:1).  With respect to Mr. Deroui, Plaintiff cannot point to any evidence of gender discrimination.  She merely asserts that,

on "at least a couple of occasions," Mr. Deroui referred to her as a "bitch"; stated "grow up and stop being such a baby" (a gender neutral comment); and referred to her as a "bar back," which Plaintiff admits means "just a person who supports a bartender." (*Id.*, 101:8-18). These comments, apparently considered by Plaintiff to be "misogynistic," entirely fall short of meeting Plaintiff's heavy burden of showing that Defendant's legitimate reason for her termination was pretextual. *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365, 376, 380 (2d Cir. 2002) (holding that 12 incidents cited by plaintiff, taken together, were not sufficiently severe or pervasive to establish a hostile work environment and further finding that seven of those incidents supported no inference of sex-based hostility and remaining incidents were too mild to create an abusive work environment).

## II.

### THE FIRST CAUSE OF ACTION, TO THE EXTENT IT ALLEGES "ETHNICITY" DISCRIMINATION UNDER TITLE VII, AND THE SEVENTH CAUSE OF ACTION, WHICH ALLEGES AGE DISCRIMINATION UNDER THE ADEA, MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, BECAUSE PLAINTIFF'S ETHNICITY AND AGE CLAIMS DO NOT REASONABLY RELATE TO HER EEOC CHARGE

Plaintiff's Title VII and ADEA discrimination claims on the basis of ethnicity and age, respectively, should be dismissed because Plaintiff failed to exhaust her administrative remedies through the EEOC.[6] "Exhaustion of administrative remedies through the EEOC is 'an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d

---

[6] Plaintiff's age discrimination claim also should be dismissed because, at the October 6, 2017 Pre-Motion Conference, Plaintiff's counsel conceded that with respect to the merits, Plaintiff's claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") "is probably not sustainable." (Rosen Decl., Ex. 4, 5:16-23).

Cir. 2001).   A federal court may only consider those Title VII or ADEA claims that were included in the original EEOC charge, those that are reasonably related to that charge, or those that can reasonably be expected to grow out of the charge of discrimination.  *Del Franco v. New York City Off-Track Betting Corp.*, 429 F.Supp.2d 529, 541 (E.D.N.Y. 2006), *aff'd*, 245 Fed. Appx. 42 (2d Cir. 2007); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2003)).  *See also Cunningham v. Consol. Edison Inc.*, 2006 U.S. Dist. LEXIS 22482, 2006 WL 842914, at *13 (E.D.N.Y. Mar. 28, 2006) ("[W]here subsequent claims are reasonably related to claims brought in an EEOC charge, the subsequent claims are not barred.").

A claim not specifically included in an EEOC charge is "reasonably related" to the charge if, for example, the subsequent claim is one for retaliation or where a subsequent claim "'alleges further incidents of discrimination carried out in precisely the same manner.'" *Katz v. Beth Israel Medical Center*, 2001 U.S. Dist. LEXIS 29, 2001 WL 11064, at * 6 (S.D.N.Y. Jan. 4, 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397 at 1401 (2d Cir. 1992)).

Here, Ms. Braunstein failed to exhaust her administrative remedies with respect to her discrimination claims on the basis of age and ethnicity.  With respect to the Charge Plaintiff filed with the EEOC on February 8, 2016, Plaintiff checked two boxes: "sex" and "retaliation." (Defs.' 56.1, ¶ 39).  She did not check the "age," "religion," or "national origin" boxes.  (*Id.*). Attached to the Charge was a typewritten Statement of Charging Party ("Statement").  (*Id.* at ¶ 40). In the opening paragraph, Plaintiff wrote, "I believe I have been discriminated against *based on my gender.*"  (*Id.*) (emphasis added).   Nowhere in the Statement did Plaintiff state that she believed that she had been discriminated against on account of her religion, national origin or age.  (*Id.* at ¶ 41).   In addition to the standard Notice of Right to Sue, which was issued by the

17

EEOC, the EEOC also issued a separate letter dated August 15, 2016.  (*Id.* at ¶ 42).  In the second paragraph of that letter, the EEOC indicated that the Charge was based on claims of gender discrimination.  (*Id.*).  As such, neither the EEOC nor the Defendants were on notice that Plaintiff also was raising age and ethnicity discrimination claims.  Accordingly, these claims, which were not reasonably related to her gender discrimination claim, should be dismissed as a matter of law.

## III.

### THE SECOND CAUSE OF ACTION, ALLEGING HOSTILE WORK ENVIRONMENT, MUST BE DISMISSED BECAUSE, UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE INCIDENTS AND CONDUCT CHALLENGED BY PLAINTIFF WERE NOT OBJECTIVELY PERVASIVE OR SEVERE TO ALTER THE CONDITIONS OF PLAINTIFF'S EMPLOYMENT

To sustain a hostile work environment claim based on gender[7] pursuant to Title VII, Plaintiff "must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment."  *Love v. City of N.Y. Dep't of Consumer Affairs*, 390 F. Supp.2d 362, 371-72 (S.D.N.Y. 2005) (citing *Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004)).  Courts use a "totality of the circumstances" approach for determining whether a plaintiff's work environment is sufficiently hostile to support a claim of hostile work environment.  *Id.*  Importantly, "[a] work environment will be considered hostile if a *reasonable* person would have found it to be so. . . ."  *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).  Plaintiff's subjective perception of hostility may not alone support a hostile work environment claim.   *Love*, 390 F. Supp.2d at 371 (the alleged conduct must have "created an

---

[7]   Per footnote 1, *supra*, Defendants will not address the standards for proving a hostile work environment based on sexual harassment, as Plaintiff has conceded that she has not alleged that claim.

environment that a reasonable person would find hostile or abusive"); *see also Salerno v. City Univ. of N.Y.*, 2003 U.S. Dist. LEXIS 16474, 2003 WL 22170609, at *33 (S.D.N.Y. Sept. 16, 2003) ("[S]imple teasing offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (internal citations omitted).

Here, considering the totality of the circumstances, a reasonable person would not find that Plaintiff's proffered evidence reflects conduct that was sufficiently severe or pervasive on the basis of her gender or ethnicity.  With respect to gender, Ms. Braunstein claims that Mr. Mariano called her a bitch and spelled out the word at a meeting, but a recording she produced of this meeting revealed that Mr. Mariano did not directly call her a bitch or use the term in a derogatory manner, but instead spelled out the word in the context of working with her to brainstorm ways in which to improve her relationships with both her male and female colleagues and effectively work as a team during stressful situations.  (*See* Defs.' 56.1, ¶ 32).  Plaintiff also alleges a single incident in which Mr. McSloy, a morning bartender, did not allow Plaintiff to start setting up for her evening shift at the bar during the transition between the two shifts.  (*See id.* at ¶ 13).  In an e-mail to Mr. Mariano, she complained that Mr. McSloy "did all he could to get in my way physically, as well as constantly raising his voice to me about being in his way." (*Id.*).   Such isolated comments and incidents do not objectively amount to evidence that the workplace was "permeated with discriminatory intimidation, ridicule and insult . . . sufficiently severe or pervasive to alter the conditions of [Plaintiff's employment]."  *Love*, 390 F. Supp. 2d at 371-72 (a supervisor, using his middle finger to point things out, allegedly touched plaintiff's backside, and a co-worker touched plaintiff's hands when they worked together and hit plaintiff in her chest with back of his hand; objectively viewed under the totality of the circumstances,

these incidents were not "sufficiently severe or pervasive").  Plaintiff's subjective belief that she was the victim of a gender-biased hostile work environment does not satisfy the objective "reasonable person" standard.

With respect to her ethnicity claim, Plaintiff only points to a vague comment she claims she overheard Mr. Deroui make about  "Jews owning the banks and media" (Rosen Decl., Ex 1, at 101:19-23), but does not allege that such comment was specifically directed at her, directed at her work, or in some way implicated her work for Defendants.  Again, under the objective standard, a reasonable person would not find this singular comment sufficient to create a hostile or abusive environment based on her ethnicity.  Plaintiff's allegation that Mr. Deroui told her to "grow up and stop being such a baby" (*id.* at 101:8-15) does not evidence gender-bias against Plaintiff, as the word "baby" is gender neutral; nor does it reflect that Mr. Deroui was biased against her because of her ethnic background.  As such, Plaintiff's hostile work environment claims fail as a matter of law.

**IV.**

**THE THIRD CAUSE OF ACTION, ALLEGING RETALIATION, MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT PRODUCED ANY PROBATIVE EVIDENCE OF A "CAUSAL CONNECTION" BETWEEN HER TERMINATION AND ANY INTERNAL COMPLAINTS ABOUT STAFF THAT SHE RAISED**

### A.    <u>Plaintiff Does Not Meet the Applicable Retaliation Claim Standards</u>

Ms. Braunstein's retaliation claim is subject to the same *McDonnell Douglas/Burdine* burden-shifting framework that is applicable to her discrimination claims.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims under Title VII). *Taylor v. Abercrombie & Fitch Stores, Inc.*, No. 08-CV-3264, 2010 WL 4168631, at *3 (E.D.N.Y. Oct. 18, 2010) (citing *Terry v. Ashcroft*,

336 F.3d 128, 140-41 (2d Cir. 2003)).[8]  The only difference lies in the elements of the *prima facie* case.  To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) she engaged in a statutorily protected activity; (2) her employer was aware of this activity; (3) she suffered an adverse employment action; and (4) there is a 'causal connection' between the protected activity and the adverse employment action."  *Id.* (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006)).  Ms. Braunstein must do more than simply allege a causal connection; she must produce admissible evidence upon which a reasonable jury could conclude that she was the victim of retaliation.  *Hollander v. American Cyanamid Co.*, 894 F.2d 80, 86 (2d Cir. 1990).  She has not done so.

## B.  Plaintiff Has Produced No Evidence Establishing A Causal Connection Between Any Alleged "Materially Adverse Employment Action" She Suffered And The So-Called "Discrimination" Claims She Raised

Ms. Braunstein is unable to demonstrate the requisite causal connection because her termination was based upon a written performance evaluation (Defs.' 56.1 ¶ 21) along with multiple complaints raised against Ms. Braunstein by male and female coworkers alike.  (Defs.' 56.1, ¶¶ 15-17, 23, 35-37; Wenger Aff., Exs. H, I, N, R, S, T; Rosen Decl., Ex. 2, at 180:20-181:16; Rosen Decl., Ex. 3, at 39:19-40:14; 46:15-47:6).  *See Clerge v. Edison*, No. 95 Civ. 9072, 1999 WL 239688, at *5 (S.D.N.Y. Apr. 23, 1999) (finding no retaliatory dismissal where such dismissal was "plainly taken in response to plaintiff's frequent and well-documented infractions").  In Ms. Braunstein's written response to her performance evaluation, she did not state that she felt the performance evaluation discriminated against her on the basis of any of her protected characteristics.  (Defs.' 56.1, ¶ 27).  The record reflects that Mr. Mariano met with and

---

[8]  Claims of retaliation for engaging in protected conduct under NYSHRL are analyzed under the same *McDonnell Douglas* burden-shifting analysis.  *See* cases cited in footnote 2, *supra*.

discussed Ms. Braunstein's performance deficiencies, complaints from her coworkers, and unprofessional behavior on numerous occasions. (*Id.*, at ¶¶ 29-32, 35). Indeed, a recording produced by Ms. Braunstein of a meeting between her and Mr. Mariano reflects that Mr. Mariano supported Ms. Braunstein's development as a bartender and encouraged her to develop ideas and practices for use at the Hotel. (*Id.* at ¶ 32). Given these undisputed facts, there is no doubt that Defendants had a legitimate belief that Ms. Braunstein engaged in such poor behavior.

In light of all of the foregoing, Braunstein's retaliation claims have no merit and should be summarily dismissed.

## V.

### PLAINTIFF'S FOURTH CAUSE OF ACTION, SOUNDING IN NEGLIGENCE, MUST BE DISMISSED BECAUSE IT IS PREEMPTED BY THE WORKER'S COMPENSATION LAW

Plaintiff's negligent supervision claim should be dismissed because it is well-settled in New York that such claims are preempted by New York's Workers' Compensation Law. Workers' Compensation Law § 11 provides:

> The liability of an employer prescribed by the [Workers' Compensation Law] shall be exclusive and in place of any other liability whatsoever, to such employee . . . or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom.

Additionally, Workers' Compensation Law § 29(6) provides that workers' compensation benefits "shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ."

New York courts have consistently found that claims for negligent supervision are preempted by New York's Workers' Compensation Law. *See, e.g., Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (finding New York Workers' Compensation Law barred

negligent supervision claims arising out of sexual assault by a co-worker); *Martinez v. Canteen Vending Servs. Roux Fine Dining Chartwheel*, 18 A.D.3d 274 (1st Dep't 2005) ("The exclusivity of remedy provisions set forth in Workers' Compensation Law §§ 11 and 29(6) preclude common-law negligence claims against defendants").

In the instant matter, because Plaintiff, while employed by Sahara, had workers' compensation coverage, Plaintiff cannot assert a cause of action for negligent supervision against Defendants as a matter of law.

### VI.

### PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT DEFENDANTS INVESTIGATED PLAINTIFF'S CLAIMS

In the Fifth and Sixth Counts of her Complaint, Ms. Braunstein alleges that Defendants "failed to act on Plaintiff's claims of discrimination, harassment and hostile work environment." As previously noted, Plaintiff conceded that she is not pursuing sexual harassment claims.  (*See* ECF Doc. No. 22; *see also* Rosen Decl., Ex. 4, at 21:22-22:22); *see supra* fn.1.  The remaining claims contained in the Fifth and Sixth Causes of Action for discrimination and hostile work environment based upon gender should fail because the record reflects that Defendants conducted a prompt investigation of all claims asserted by Plaintiff during her employment.

For example, when Ms. Braunstein complained about alleged inappropriate comments made to her by a third-party tailor, Suzanne Paradi ("Ms. Paradi") from the Hotel's Human Resources Department responded to Ms. Braunstein the next day that she would follow up on the incident and inform the tailor that such comments were inappropriate and unwelcome.  (Defs.' 56.1, ¶ 12).  Plaintiff admitted at her deposition that she considered Ms. Paradi's response to be an appropriate response by someone from human resources, and that the response reflected that

Ms. Paradi had sensitivity to what Plaintiff had complained about.  (*Id.*; *see* Rosen Decl., Ex. 1, at 172:18-173:6).  Plaintiff also admitted at her deposition that the tailor whom she alleged had made the inappropriate comments did not repeat them to her on another occasion following Ms. Paradi's remedial action.  (Defs.' 56.1, ¶ 12; Rosen Decl., Ex. 1, at 173:7-10).   In addition, Ms. Braunstein wrote to Ms. Paradi in an e-mail that Mr. Deroui allegedly told her to "grow up and stop being such a baby."  (Defs.' 56.1, ¶ 19).  Ms. Paradi promptly responded that same day.  (*Id.* at ¶ 20).  Plaintiff again admitted at her deposition that she thought Ms. Paradi's response was appropriate.  (*Id.*).

When Plaintiff complained about the behavior of Mr. McSloy, Mr. Mariano responded to her that same day, apologized, and stated that he was in the process of getting witness statements.  (*Id.* at ¶ 13).  Mr. Mariano explained that the morning bartenders, including Mr. McSloy, expressed concern to the Union that their shift was being cut short, but that the team would need to work together to resolve scheduling obstacles.  (*Id.*).   Mr. Mariano stated to Plaintiff that "it is unacceptable that any colleague would treat another with disrespect" and told her to "feel free to call [him] at any time to discuss this further."  (*Id.*).  Mr. Hunt testified that he and Kristin Stabile, the interim Director of Human Resources, assisted in the investigation.  (*Id.* at ¶ 14; *see* Rosen Decl., Ex. 3, at 37:21-39:23).  Plaintiff, Mr. McSloy, and additional witnesses were interviewed.  (Defs.' 56.1, ¶ 14).  Mr. Marini, one of the witnesses, revealed that Plaintiff "was actually [verbally] bullying [Mr. McSloy] beforehand."  (*Id.*; *see* Rosen Decl., Ex. 3, at 39:24-40:3).

Despite Plaintiff's current allegations against Mr. Mariano, Plaintiff admitted at her deposition that she never accused Mr. Mariano of being biased against female employees, and there is no evidence in the record to support that she complained about Mr. Mariano during her

employment.  (Rosen Decl., Ex. 1, at 97:24-98:1).  Mr. Mariano wrote to Ms. Braunstein that she could address any concerns to him or to Mr. Hunt.  (Defs.' 56.1, ¶¶ 13, 29).  Ms. Braunstein in fact met with Mr. Mariano multiple times to discuss disagreements she had with her female and male colleagues and her performance review.  (Rosen Decl., Ex. 2, at 239:17-242:7; 245:17-246:8; *see generally id.*, Ex. 5).  The record reflects that Defendants continuously exercised reasonable care to prevent and correct promptly any unlawful conduct.  The Court should summarily dismiss Plaintiff's Fifth and Sixth Causes of Action.

## **CONCLUSION**

For all of the forgoing reasons, Defendants respectfully request that their motion for summary judgment be granted and that the Complaint by dismissed in its entirety.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
Attorneys for Defendants

By: */s/ David I. Rosen*
  David I. Rosen

Dated:  March 14, 2018