# EXHIBIT

# 4

# In The Matter Of:

*TINA MICHELLE BRAUNSTEIN, v.*

*SAHARA PLAZA, LLC, THE PLAZA HOTEL,*

*October 6, 2017*

*Southern District Court Reporters*

Original File ha61brac.txt

Min-U-Script® with Word Index

This Page Intentionally Left Blank

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

Ha61brac                                                    Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   TINA MICHELLE BRAUNSTEIN,
 4              Plaintiff,
 5          v.                    16 Civ. 8879 (VSB)
 6   SAHARA PLAZA, LLC, THE PLAZA
     HOTEL,
 7
 8          Defendants.           Premotion Conference
 9   ------------------------------x
                                  New York, N.Y.
10                                October 6, 2017
                                  10:17 a.m.
11   Before:
12             HON. VERNON S. BRODERICK,
13                                District Judge
14             APPEARANCES
15   RAISER & KENNIFF, PC
          Attorneys for Plaintiff
16   BY:  E. GORDON HAESLOOP, ESQ.
17   SILLS CUMMIS & GROSS, P.C.
          Attorneys for Defendants
18   BY:  DAVID I. ROSEN, ESQ.
19
20
21
22
23
24
25
```

Ha61brac                                                    Page 2

```
 1              (Case called)
 2         THE COURT: If counsel could please identify
 3   themselves for the record.
 4         MR. HAESLOOP: Yes.  Gordon Haesloop, attorney for the
 5   plaintiff, of Raiser & Kenniff, 300 Old Country Road, Mineola,
 6   New York.
 7         THE COURT: Okay.  Good morning.
 8         MR. ROSEN: Good morning, your Honor.  David I. Rosen
 9   from the firm Sills Cummis & Gross, P.C.  We represent the
10   defendants Sahara Plaza, LLC and Fairmont Hotels and Resorts of
11   Maryland, LLC.
12         THE COURT: Okay.  All right.  Good morning.
13         So we're here on a premotion conference.  Let me
14   review for the parties the documents I have.  I have
15   Mr. Rosen's October 2nd letter, I have Mr. Haesloop's
16   October 4th letter.  Is there anything else I should have in
17   connection with today's conference?  Mr. Haesloop?
18         MR. HAESLOOP: No, not today.
19         THE COURT: All right.  Mr. Rosen?
20         MR. ROSEN: No, your Honor.
21         THE COURT: All right.  So why don't we talk about the
22   proposed motion for summary judgment.  I guess, Mr. Haesloop,
23   how do you respond to defendant's argument with regard to the
24   negligent supervision claims, that they would be preempted by
25   the workers' compensation laws here?
```

Ha61brac                                                    Page 3

```
 1         MR. HAESLOOP: I believe that the supervision claim is
 2   part and parcel of the pattern of behavior by the defendants to
 3   deprive the plaintiff of her equal opportunity and in
 4   furtherance of their pattern of discrimination against her.
 5         THE COURT: So basically is it part of the hostile
 6   work environment claim?
 7         MR. HAESLOOP: Yes, yes.  In other words, she would
 8   make complaints to supervisors and to HR, and there was
 9   inadequate responses to what she was alleging to be
10   discriminatory acts against her.
11         THE COURT: Okay.  And with regard to those, I don't
12   recall -- are those expressly delineated in the complaint; in
13   other words, each time that she contacted human resources?
14         MR. HAESLOOP: I believe -- I don't know if the
15   complaint -- let me just check on that -- delineates exactly
16   when those complaints were made in the complaint, but it was
17   over time.
18         THE COURT: Okay.  And with regard to those contacts,
19   are you considering those protected acts?
20         MR. HAESLOOP: I believe that that's in support of the
21   retaliation claim is that her activity in reporting what was
22   happening to her required a response or at least from some
23   supervisor from HR as to her immediate supervisor, and that
24   never occurred.
25         THE COURT: Now with regard her EEO complaint that
```

Ha61brac                                                    Page 4

```
 1   she filed, am I correct that that did not include a claim with
 2   race discrimination, or age discrimination?
 3         MR. HAESLOOP: I believe that is correct.
 4         THE COURT: So how do you respond to the argument by
 5   the defendant that the plaintiff failed to exhaust her remedies
 6   with regard to that?
 7         MR. HAESLOOP: I believe what she submitted did
 8   include gender and race discrimination.
 9         THE COURT: Well, I mean, obviously, part of it is
10   processing and part of it is notice issues for defendant.
11   Where in the complaint does it state where she complained to HR
12   and it was clearly indicated that her claim was not only of
13   sexual harassment but also that it was age and race
14   discrimination?
15         MR. HAESLOOP: Well, it was ethnicity discrimination
16   more than race.
17         THE COURT: Okay.  But I guess in the complaint, where
18   are the allegations that go to that, such that defendant would
19   have been on notice?  I'm not saying that that is sufficient,
20   in other words, to exhaust remedies, because it's conceded,
21   right, that it wasn't in the EEOC complaint, so I'm not sure
22   that's sufficient.  But let's assume for the moment that it
23   would be.  Where in the complaint are those allegations?
24         MR. HAESLOOP: I believe that my client had a detailed
25   journal that she kept, which is reflected in the complaint, and
```

October 6, 2017

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

| Ha61brac | Page 5 |
|---|---|

1 I don't have the complaint with me today.

2 THE COURT: Okay. Well, I guess what I would say is

3 this: Do you believe that there are in fact such allegations?

4 Whether they're in the complaint or not, do you believe that,

5 based upon your knowledge of the journal, that those things are

6 things that not only are in the journal but that were in fact

7 reported to the defendant or the defendant's human resources

8 department?

9 MR. HAESLOOP: I believe that the defendant is on

10 notice of those complaints based on not only the journal but my

11 client's testimony at her deposition, and I believe the

12 complaint does spell out at least enough without saying, "I was

13 discriminated against because I was Jewish or because I was a

14 woman," that the complaint taken as a whole does indicate that,

15 yes.

16 THE COURT: Well, and that may be, but there's a

17 different question, which is, at the time that she was

18 employed, did she in fact disclose to the defendant, when she

19 was making the complaint, when she was going to human

20 resources, did she in fact, you know, raise the ethnicity issue

21 and the age issue?

22 MR. HAESLOOP: The age issue is probably not

23 sustainable. I will agree with that.

24 THE COURT: Okay.

25 MR. HAESLOOP: But I believe the ethnicity and the

| Ha61brac | Page 6 |
|---|---|

1 gender claims are sustainable.

2 THE COURT: Okay. All right. Well, what I would

3 suggest is this, because I don't recall, again, the specific

4 allegation in the complaint that actually raised the ethnicity

5 issue, but let me ask this, because I don't have it in front of

6 me. Well, Ms. Williams, could you print out a copy of the

7 complaint.

8 My concern is this. Obviously Mr. Rosen can file his

9 motion, and once you look at it, you may say, oh, I'll decide

10 to amend, but if we can short-circuit that, in other words, if

11 we know already that there are factual allegations that you

12 believe are, either from your client's deposition -- well, let

13 me take a step back. The deposition testimony has to reflect

14 matters that actually occurred and that she disclosed at the

15 time of her employment.

16 MR. HAESLOOP: She disclosed by in person and by

17 emails.

18 THE COURT: Okay. All right. And I think it would

19 make sense to have those allegations. In other words,

20 Mr. Rosen would file it, then you might file an amended

21 complaint if those allegations aren't already in there.

22 So I'm just looking. Mr. Rosen, do you recall

23 allegations relating to -- why don't we just say ethnicity now,

24 because it sounds as if Mr. Haesloop has indicated that the age

25 claim is not sustainable. So I believe that could be worked

| Ha61brac | Page 7 |
|---|---|

1 out with the parties, how you want to deal with that, to take

2 care of getting that out of the case.

3 MR. ROSEN: Your Honor, I can address everything that

4 came up during this colloquy with counsel, if I may.

5 THE COURT: Sure. You may. I'll let you go ahead.

6 MR. ROSEN: I was wondering if I could start with the

7 negligence count.

8 THE COURT: Absolutely.

9 MR. ROSEN: If you take a look at the complaint, and

10 you take a look at the fourth cause of action, there is a

11 freestanding negligent supervision claim. It does not

12 reference any other statute that's a common law claim. The

13 case law is uniform; you cannot pursue that, based on the

14 workers' comp exclusivity bar.

15 And I also want to note, your Honor, that your court

16 rule 4(a), paragraph 2 expressly states that it's an obligation

17 of the nonmoving party in his responsive letter to address all

18 of the arguments and authorities that I cited in my letter.

19 Plaintiff's counsel did not do so. I would submit, your Honor,

20 that based on the law, based on the way it was pled, based on

21 the nonresponse, that the fourth cause of action should be

22 summarily dismissed. I don't see that there is any argument --

23 and certainly none has been advanced here -- for a separate

24 cause of action.

25 Now with respect to what was before the EEOC, I have a

| Ha61brac | Page 8 |
|---|---|

1 copy of the charge here, your Honor, if you'd like to see it.

2 THE COURT: No. I think it's pretty well conceded

3 that -- I mean, I don't remember --

4 MR. ROSEN: Beyond ethnicity. I mean, beyond age.

5 The age is clearly not there.

6 THE COURT: Okay.

7 MR. ROSEN: The charge itself is identified as sex and

8 retaliation. There's nothing with respect to race or religion

9 or national origin.

10 Additionally, in terms of what the EEOC's

11 understanding of the charge was, in addition to the standard

12 notice of right to sue, which they issued, they issued a

13 separate letter, which was dated August 15, 2016, and it is

14 plain from the Paragraph No. 2 that they understood this to be

15 solely in terms of discrimination, a gender discrimination

16 claim, so there is no predicate, there is no exhaustion of

17 remedies on ethnicity with respect to Title VII, and the case

18 law is also consistent on that.

19 So I would submit that putting us on notice about

20 things in a complaint but not advising the EEOC they need to

21 investigate this doesn't cure the defect. And also informing

22 us through a journal, which was produced during discovery,

23 which we'd never seen before, or my client didn't, is not

24 something that they would have accepted.

25 As far as -- I'm happy to address everything in my

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

1   letter.
2       THE COURT: Let me talk first about the negligence
3   claim. And again, I'm not going to at this stage summarily
4   dismiss it on the basis of the letters. I mean, the purpose of
5   the letters are principally for several things. But one is to
6   advise me of what the nature of the motion is going to be, and
7   two, so that we have a conference like this so that there is an
8   understanding of exactly what issues I think need to be
9   addressed, in order for me to make a ruling, and hopefully, as
10  happened today, Mr. Haesloop has indicated the age claim is not
11  going to go forward, so I don't think you need to brief that.
12  So it's for that purpose. But I do understand what you're
13  saying.
14      So I think, Mr. Haesloop, Mr. Rosen is correct on the
15  law. I think that may be the case, but I'm not ruling at this
16  stage. While those allegations that you claim, the factual
17  allegations may still be in the complaint, the actual cause of
18  the action, the negligent supervision, you may have a problem
19  from a legal standpoint maintaining that.
20      MR. ROSEN: Yes.
21      THE COURT: So what I'd ask you to do is take a look
22  at that. You know, I do think, you know, the issue with regard
23  to exhaustion, I haven't gone back to look at the law. I ask
24  you to take a look at that also. But in particular, though, to
25  the extent that there is any possibility that your client could

1   overcome not having raised ethnicity or religion in her EEOC
2   complaint, because I'm not sure that there is, but I'd like you
3   to take a look at that and in particular whether or not,
4   contemporaneously -- and it can't just be a journal that her
5   employer was unaware of. I don't believe that would be
6   sufficient in that regard. To the extent you can overcome, you
7   can put the defendant on notice. But it would be contact with
8   human resources and/or others that you believe actually
9   occurred that perhaps -- I don't know whether your client
10  testified to this during her deposition or not, or you
11  mentioned emails, whether there are emails that document that.
12      MR. HAESLOOP: Correct.
13      THE COURT: Because just in flipping through -- and
14  again, I may have missed something -- I don't recall having
15  seen allegations that -- ah, maybe paragraph 33, but I'm not
16  sure. I mean, it's a comment by Mr. Deroui. I'm not sure if
17  that's the way you pronounce it.
18      MR. HAESLOOP: That is correct.
19      THE COURT: -- by Mr. Deroui, not necessarily directed
20  at the plaintiff, apparently, sort of, but in her presence.
21  But the question I think is not so much that a comment was made
22  but that the plaintiff then went to HR or in some way
23  complained about that activity, since it's not in the EEOC
24  complaint.
25      MR. ROSEN: And your Honor, if I might be heard.

1       THE COURT: Yes.
2       MR. ROSEN: Again, there are only so many things I can
3   address in seven pages, but there's also a doctrine that's
4   called a stray comment doctrine that basically says if there is
5   a stray comment, as you point out, that it's not actually
6   directed towards the plaintiff and there's no nexus between the
7   comment and any of the adverse action that is the subject of
8   the complaint, that will not create a meritorious cause of
9   action. And not only is this the only so-called evidence that
10  plaintiff has of religious discrimination in the complaint, she
11  says the same thing in a deposition. There is the one comment.
12  And there's nothing there that would indicate that that formed
13  part of any decision.
14      THE COURT: And I guess the other question I have is,
15  well, yes, I mean, as a legal matter, I'm familiar with the
16  stray comment issue and how it plays out.
17      So I guess, Mr. Haesloop, I'd ask you to sort of take
18  a look at that in particular, but, you know, I don't see
19  anywhere in the complaint where -- Now, Mr. Rosen, just to be
20  sure, the comment that was referred to in the deposition, it's
21  the same comment in the complaint?
22      MR. ROSEN: Exact same comment.
23      THE COURT: All right. I just wanted to make sure
24  that we're on the same page. And was there any testimony
25  during the deposition that the plaintiff went to human

1   resources or someone at the company, at her employer about that
2   comment?
3       MR. HAESLOOP: I believe she did bring that up with
4   her supervisor.
5       THE COURT: Well, I guess --
6       MR. HAESLOOP: But you have to understand the
7   hierarchy. She's a bartender, all right? She has a director
8   of food and beverage. She has three separate groups of
9   supervisors. They overlap, and when one is not there, the
10  other takes charge. At different times she has made requests
11  to them that they take some form of action against the other
12  bartenders and, in one instance, her own supervisor for making
13  derogatory remarks to her. Those went to HR. She never got an
14  adequate response, if any.
15      THE COURT: Okay. Again, you know, if it is just this
16  one comment, and at least from the complaint it doesn't appear
17  that it was directed at her, while on its face derogatory and
18  stereotypical and bigoted, it is one comment, not specifically
19  directed at her and not necessarily directed, at least as far
20  as I can see, directed at her work -- in other words, in some
21  way implicating her work for the defendant.
22      MR. HAESLOOP: Well, we may disagree with that. Only
23  that it was not specifically directed, "But, Tina, you 'blah
24  blah blah,'" no, but is it a comment that was made that she was
25  designed to overhear? Yes.

October 6, 2017

---

Ha61brac                                                    Page 13

1    THE COURT: Okay. I mean, I guess, again, if it's
2 just one comment, I'm not sure it will be sufficient, but if
3 the argument is, although not explicitly directed at her,
4 that's exactly what was going on -- and the other thing, I
5 guess, and obviously it may be, but is there an allegation in
6 the complaint that the actors either knew the plaintiff was
7 Jewish or believed her to be Jewish?
8    MR. HAESLOOP: They believed her to be Jewish because
9 she's always worn the Star of David outside of her uniform.
10    THE COURT: Okay. But is that in the complaint?
11 Because that I think also is something that the defendant would
12 have to be aware of, or there's a perception that she in fact
13 is a person of a protected class. So look at the complaint
14 with regard to that also. And again, off the top of my head,
15 those are what comes to mind.
16    Does the fact that there's a collective bargaining
17 agreement here, does that in any way impact the claims here?
18 In other words, as I understand it, the plaintiff was in a
19 probationary period.
20    MR. HAESLOOP: Yes, unknown to her. In all the
21 documents she received, at her orientation, training, which
22 included sexual harassment policy, discrimination policies,
23 there was nothing in what she received that referred to the
24 collective bargaining agreement. I only recently received it
25 because I requested it from defense counsel, and I discussed

---

Ha61brac                                                    Page 14

1 the fact with my client that it does provide, in an agreement
2 between the union and the defendant, 150-day probationary
3 period, but as far as she was aware from her prior experiences,
4 she had never been, as a union member, under probationary
5 period. And she was not informed.
6    THE COURT: But she was part of the union.
7    MR. HAESLOOP: Yes.
8    THE COURT: Okay. And I don't know about what the
9 entire process is, but I guess the question is, so if she was
10 on --
11    MR. HAESLOOP: It is very clear, the documents that
12 have been provided through discovery, that there was a
13 probationary period of 150 days pursuant to an agreement. The
14 CBA is the collective bargaining agreement. There's a separate
15 agreement which is now incorporated into that between the
16 Sahara and my client. But she was never made aware --
17    THE COURT: I'm sorry. A separate agreement between?
18    MR. HAESLOOP: The defendant and the union.
19    THE COURT: The union. Okay. All right. So with
20 regard to this issue of probationary employees, when someone
21 starts, there's a probationary period. That's in addition to
22 the CBA.
23    MR. HAESLOOP: Yes.
24    THE COURT: Okay. All right. And so I guess what
25 you're saying is that your client was unaware of that --

---

Ha61brac                                                    Page 15

1    MR. HAESLOOP: That is correct.
2    THE COURT: Okay. Well, let me hear from Mr. Rosen.
3    MR. ROSEN: Well, unfortunately, Mr. Haesloop
4 overlooked the statement that his client filed with the EEOC,
5 which she signed on February 8, 2016, and she said that the
6 same was true. And what she said was, in her own words, "Upon
7 hiring, we were told we had to complete a five-month probation
8 period." Right in the charge. This is her own statement.
9    He also overlooks the fact that in the hiring manual,
10 it plainly states, "The work you will do is covered by an
11 existing collective bargaining agreement between the Plaza and
12 New York Local Trade staff." But the idea she did not know of
13 the five-month probationary period is belied by her own
14 statements.
15    THE COURT: I guess the question is: With regard to
16 the claims, what is the impact of that? In other words, on the
17 actual claim.
18    MR. HAESLOOP: Well, you can be fired under a
19 probationary period, as we're well aware of, for no reason or
20 some reason.
21    THE COURT: Yes.
22    MR. HAESLOOP: However, that cannot be a pretext for a
23 discrimination claim.
24    THE COURT: Okay. Well --
25    MR. HAESLOOP: That's my position.

---

Ha61brac                                                    Page 16

1    THE COURT: Well, I understand.
2    MR. ROSEN: Your Honor, that's not his position. His
3 position in this letter is, it's pretextual because she did not
4 know that she was subject to a five-month probationary period
5 and this is now something that was kind of brought to her
6 attention after the fact, but she acknowledges she knew it at
7 the beginning of her employment.
8    THE COURT: It seems to me -- again, I don't have the
9 EEOC complaint in front of me, but -- from what you read that
10 she was aware of that, so I guess the argument is, in
11 connection with defendant, defendant could fire her for any
12 reason.
13    MR. HAESLOOP: Right.
14    THE COURT: And I apologize. Mr. Haesloop, what is
15 the case law that you would point to? In other words, is it
16 that the defendant basically doesn't need to come up with a
17 legitimate reason? They pointed to the probationary period,
18 and in response to that, what would you point to?
19    MR. HAESLOOP: Well, I would point to the fact that
20 there are cases that -- I don't have them with me -- that have
21 been sustained where they probationally fire you because you're
22 on probation, and the claim is, because I was a woman and
23 Jewish, and that the reasons given, or no reason given during
24 the probationary period, and that was sustained, in one respect
25 a claim of discrimination based on gender, religion, if in fact

---

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

Ha61brac                                                            Page 17

1  that's what the reason was, which she was not given a reason
2  for her termination, at her HR meeting.
3        THE COURT: Although I don't know as a legal matter
4  that is actually necessary, that's a separate question then
5  whether or not the probationary discharge was a pretext for
6  discrimination in some way. But let me ask this, Mr. Haesloop.
7  Since there are a number of things that we've discussed today
8  relative to the complaint with regard to the age discrimination
9  claim, the claim with regard to ethnicity or religious
10 discrimination, where there is the one allegation in the
11 complaint that doesn't appear to be an allegation that
12 defendants believed plaintiff to be Jewish. I understand what
13 you told me here, but I'm not sure that's in the complaint. I
14 guess what I'm going to ask is, because those things are not in
15 there, I'd want you to take a look at the complaint and see if
16 there are additional facts that you believe address some of the
17 things that Mr. Rosen has raised. Obviously, you can also,
18 during the time period I'm going to give you, remove the age
19 claim.
20       MR. HAESLOOP: I will discuss all this with Mr. Rosen
21 after I've had the review during the period that you're about
22 to grant.
23       THE COURT: Well, what I'd like you to do, in the next
24 30 days I'd like you to prepare an amended complaint, share it
25 with your adversary, share it with Mr. Rosen. And, Mr. Rosen,

Ha61brac                                                            Page 18

1  I still expect that you may object to it and still wish to
2  move, if there are any other objections that you have at the
3  time you see it, but absent that, and obviously, with regard to
4  the motion to dismiss, what I'd like the parties to do is, if
5  the additions to the complaint, or the removal of the age
6  claim and insertion of certain facts that Mr. Haesloop believes
7  supports the claims, and again, with regard to the ethnicity
8  issue, specifically that the defendants knew or believed her to
9  be Jewish, it doesn't sound as if there are any other factual
10 allegations either that were mentioned during the deposition or
11 that are somehow in the journal that was kept. So what I'd ask
12 you to consider also is, as a legal matter, whether that's
13 sufficient to sustain going forward the claim for
14 discrimination based on that. And taking into account at the
15 same time the case law as it relates to exhaustion.
16       MR. HAESLOOP: I will certainly do so.
17       THE COURT: Okay.
18       MR. ROSEN: Your Honor, may I make a recommendation,
19 because I think it helps to streamline things.
20       THE COURT: Yes.
21       MR. ROSEN: I would recommend, whether it is a joint
22 application or simply plaintiff's filing that would be
23 unopposed, that plaintiff simply file with the Court a
24 notification of withdrawal with prejudice of the age count, and I
25 would ask Mr. Haesloop to also consider doing so with respect

Ha61brac                                                            Page 19

1  to the negligent supervision claim and also with respect to
2  anything under Title VII that requires a filing of a charge,
3  and that would be ethnicity, national origin, Jewish -- I think
4  Jewish kind of falls within that.
5        THE COURT: Look, that's fine. I apologize, because
6  however you want to deal with it, because I think if that --
7        MR. HAESLOOP: That's acceptable.
8        THE COURT: All right. So why don't you come up with
9  language, propose it to Mr. Rosen, submit it to me, and I will
10 take care of that, whatever that is. I mean, obviously the
11 age, the negligence, and ethnicity. And again, I will take
12 care of that. And other than that --
13       MR. ROSEN: There's one other thing, and that is the
14 second cause of action pleads a hostile work environment, which
15 I think that most people would understand to be gender-based
16 harassment. Mr. Haesloop, at the bottom of the second page of
17 his letter, acknowledges that she is not claiming sexual
18 harassment. So to the extent that the second count in any way
19 relates to harassment based on gender, that too needs to be
20 withdrawn. I will tell you that it has always been defendant's
21 understanding that that was one of the claims that opposing
22 counsel is pursuing, and now he's stated in writing that she's
23 not.
24       THE COURT: I had not --
25       MR. HAESLOOP: I disagree with that.

Ha61brac                                                            Page 20

1        THE COURT: All right. So let me just take a look at
2  that.
3        MR. ROSEN: Bottom of page 2, your Honor. "Plaintiff
4  has not put forth allegations of sexual harassment because with
5  her personalty, they wouldn't dare." I'm not sure who the
6  "they" are he's referring to. I assume it means
7  representatives of defendants.
8        MR. HAESLOOP: Correct.
9        THE COURT: But I guess then what is the nature of the
10 hostile work environment?
11       MR. HAESLOOP: The hostile work environment is that
12 she was called a bitch on numerous occasions, both by
13 supervisors -- you have to understand the situation. They just
14 opened the bar at the Plaza Hotel. They hired four bartenders.
15 One was a woman, three were men. My client was told she could
16 compete for the lead bartender, which is the more lucrative
17 position, obviously, and it is claimed that the three men,
18 starting in around December, when she professed, as you will,
19 that she had great abilities, if you want to call it that, or
20 that she was a good bartender, or even a better bartender, and
21 made suggestions as to how to improve the operation of the bar,
22 that the harassment started, by calling her names, referring to
23 her -- physically preventing her from entering the bar,
24 physically preventing her from leaving the bar, in very
25 insidious fashions. And this was a hostile work environment.

Ha61brac                                                Page 21

1  She was not being permitted to work freely in her chosen field.
2     MR. ROSEN: Hostile work environment is not a cause of
3  action unless it's tied into something --
4     MR. HAESLOOP: Gender.
5     THE COURT: Counsel, speak to me, not to one another.
6     MR. HAESLOOP: I'm sorry.
7     THE COURT: But that's the issue, I think.  That's at
8  least what's confusing me a little bit.  Because you're saying
9  it's not sexual harassment; you're saying, though, that they
10 were gender based?  In other words, I think we have to separate
11 sort of your client's personality and the fact that she would
12 never -- I mean, what I read your letter to be saying is, you
13 know, your client has a strong personality and people could
14 harass her and she wouldn't care.
15    MR. HAESLOOP: My client is aware of sexual harassment
16 of other female employees but not her.
17    THE COURT: No.  But you're distinguishing between
18 sort of gender --
19    MR. HAESLOOP: Yes.
20    THE COURT: -- and sexual harassment.
21    MR. HAESLOOP: Correct.
22    THE COURT: I'm not sure that the law necessarily
23 draws that distinction.  I understand what you're saying.
24 You're saying that, although I don't think this is the basis
25 for a harassment claim, that their comments weren't sexual in

Ha61brac                                                Page 22

1  nature, but that's not, I don't think, the sine qua non for an
2  actual claim.  But as I take what you're saying is that their
3  comments to her were based upon her gender.
4     MR. HAESLOOP: Yes.
5     THE COURT: Okay.  All right.  Now I think I
6  understand the distinction that you've drawn.  I'm not sure as
7  a legal matter that the fact that, for example, they weren't
8  saying quid pro quo, like, if you don't go on a date with me,
9  you can't get this shift, or something like that --
10    MR. HAESLOOP: That is correct.
11    THE COURT: But I think that still falls within the
12 rubric of gender discrimination.  But I understand now what
13 you're saying in your letter, and so you're saying you're still
14 going to maintain hostile work environment on the basis that
15 the statements that were made you believe were gender based.
16    MR. HAESLOOP: And physical activities by the
17 bartenders and the servers on multiple occasions.
18    THE COURT: Okay.  All right.
19    MR. HAESLOOP: As an example, one of the bartenders
20 rushed her while she was working at the bar, mixing a drink,
21 and he came at her, as she described it, ferociously, and she
22 broke the glass, right in her hand.
23    THE COURT: Okay.  With regard to this claim, it may
24 mean I have to parse out the actual claims, because, how does
25 that have anything to do with her gender, though?  In other

Ha61brac                                                Page 23

1  words, you're saying that they would not have done it and they
2  didn't do it to one another --
3     MR. HAESLOOP: Correct.
4     THE COURT: She was the focus of that.
5     MR. HAESLOOP: Correct.
6     THE COURT: So that was an intimidation.
7     MR. HAESLOOP: Correct.
8     THE COURT: Because she was a woman.
9     MR. HAESLOOP: Yes.
10    THE COURT: Okay.  All right.  Well, in the 30 days, I
11 think about that.  I understand what you were saying in the
12 letter.  I'm not sure as a legal matter that --
13    MR. HAESLOOP: I understand.
14    THE COURT: And I also am not sure, to Mr. Rosen's
15 point -- and I haven't gone through and counted up the number
16 of incidents, but -- whether or not it passes the bar from a
17 pleadings standpoint for the hostile work environment.  In
18 other words, when you look at the cases where hostile work
19 environment claims have gone forward and those that have been
20 dismissed, you know, I would look at those cases, and in fact I
21 happen to be looking at those cases now in connection with
22 another matter.  So just look at them and see whether you think
23 that, from a pleadings standpoint, passes the --
24    MR. HAESLOOP: I understand exactly.  What I would
25 request would be 45 days, because I'm starting a 10-day trial

Ha61brac                                                Page 24

1  on Tuesday, and I'm taking my one week that I'm allowed, if you
2  will, vacation this year, to go see my grandson in California
3  October 31st.
4     THE COURT: Okay.  All right.  Forty-five days,
5  Ms. Williams?  So that will be to take care of the filing of
6  the stipulations of dismissal or however.
7     MR. HAESLOOP: Whatever it turns out to be.
8     THE COURT: Yes.  And filing an amended complaint.
9     MR. HAESLOOP: Or.
10    THE COURT: Or filing an amended complaint.  Well,
11 okay.  So Ms. Williams, 45 days?
12    THE DEPUTY CLERK: November 20th.
13    THE COURT: Okay.  November 20th.
14    Mr. Rosen, I don't think it's necessary -- well, if
15 there is an amended complaint, I'm not sure.  Mr. Haesloop, are
16 you saying you might dismiss certain of the claims --
17    MR. HAESLOOP: That is correct.
18    THE COURT: -- and the complaint will stay as is
19 without those causes of action?
20    MR. HAESLOOP: That is correct.
21    THE COURT: Okay.  And then at that juncture, I think
22 what remains is, Mr. Rosen, you can just propose a briefing
23 schedule for the motion to dismiss on whatever --
24    MR. HAESLOOP: Whatever is remaining.
25    THE COURT: That's fine.  So within that 45 days also,

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

| Ha61brac | Page 25 |
|---|---|

1  if I could get that briefing schedule, I'm sure it will be fine
2  and we'll sign off on that and we can engage in the briefing.
3  I think we've covered all of the issues so that we don't need
4  to see each other again in advance of the briefing and of the
5  motion.
6        Is there anything else that we need to deal with?
7        MR. HAESLOOP: I do not believe so.
8        MR. ROSEN: Not today, your Honor.
9        THE COURT: Okay.  All right.  Thank you very much.
10           oOo
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

This Page Intentionally Left Blank

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

## A

abilities (1)
  20:19
absent (1)
  18:3
Absolutely (1)
  7:8
acceptable (1)
  19:7
accepted (1)
  8:24
account (1)
  18:14
acknowledges (2)
  16:6;19:17
action (10)
  7:10,21,24;9:18;
  11:7,9;12:11;19:14;
  21:3;24:19
activities (1)
  22:16
activity (2)
  3:21;10:23
actors (1)
  13:6
acts (2)
  3:10,19
actual (4)
  9:17;15:17;22:2,24
actually (5)
  6:4,14;10:8;11:5;
  17:4
addition (2)
  8:11;14:21
additional (1)
  17:16
Additionally (1)
  8:10
additions (1)
  18:5
address (5)
  7:3,17;8:25;11:3;
  17:16
addressed (1)
  9:9
adequate (1)
  12:14
advance (1)
  25:4
advanced (1)
  7:23
adversary (1)
  17:25
adverse (1)
  11:7
advise (1)
  9:6
advising (1)
  8:20
again (11)
  6:3;9:3;10:14;11:2;

12:15;13:1,14;16:8;
18:7;19:11;25:4
against (4)
  3:4,10;5:13;12:11
age (13)
  4:2,13;5:21,22;6:24;
  8:4,5;9:10;17:8,18;
  18:5,24;19:11
agree (1)
  5:23
agreement (8)
  13:17,24;14:1,13,14,
  15,17;15:11
ah (1)
  10:15
ahead (1)
  7:5
allegation (4)
  6:4;13:5;17:10,11
allegations (12)
  4:18,23;5:3;6:11,19,
  21,23;9:16,17;10:15;
  18:10;20:4
alleging (1)
  3:9
allowed (1)
  24:1
although (3)
  13:3;17:3;21:24
always (2)
  13:9;19:20
amend (1)
  6:10
amended (5)
  6:20;17:24;24:8,10,
  15
and/or (1)
  10:8
apologize (2)
  16:14;19:5
apparently (1)
  10:20
appear (2)
  12:16;17:11
application (1)
  18:22
argument (5)
  2:23;4:4;7:22;13:3;
  16:10
arguments (1)
  7:18
around (1)
  20:18
assume (2)
  4:22;20:6
attention (1)
  16:6
attorney (1)
  2:4
August (1)
  8:13
authorities (1)
  7:18

aware (6)
  13:12;14:3,16;15:19;
  16:10;21:15

## B

back (2)
  6:13;9:23
bar (7)
  7:14;20:14,21,23,24;
  22:20;23:16
bargaining (4)
  13:16,24;14:14;
  15:11
bartender (4)
  12:7;20:16,20,20
bartenders (4)
  12:12;20:14;22:17,
  19
based (12)
  5:5,10;7:13,20,20,
  20;16:25;18:14;19:19;
  21:10;22:3,15
basically (3)
  3:5;11:4;16:16
basis (3)
  9:4;21:24;22:14
beginning (1)
  16:7
behavior (1)
  3:2
belied (1)
  15:13
believes (1)
  18:6
better (1)
  20:20
beverage (1)
  12:8
Beyond (2)
  8:4,4
bigoted (1)
  12:18
bit (1)
  21:8
bitch (1)
  20:12
blah (2)
  12:23,24
blah' (1)
  12:24
both (1)
  20:12
bottom (2)
  19:16;20:3
brief (1)
  9:11
briefing (4)
  24:22;25:1,2,4
bring (1)
  12:3
broke (1)
  22:22

brought (1)
  16:5

## C

California (1)
  24:2
call (1)
  20:19
called (3)
  2:1;11:4;20:12
calling (1)
  20:22
came (2)
  7:4;22:21
can (11)
  6:8;10;7:3;10:6,7;
  11:2;12:20;15:18;
  17:17;24:22;25:2
care (5)
  7:2;19:10,12;21:14;
  24:5
Case (7)
  2:1;7:2,13;8:17;
  9:15;16:15;18:15
cases (4)
  16:20;23:18,20,21
cause (7)
  7:10,21,24;9:17;
  11:8;19:14;21:2
causes (1)
  24:19
CBA (2)
  14:14,22
certain (2)
  18:6;24:16
certainly (2)
  7:23;18:16
charge (6)
  8:1,7,11;12:10;15:8;
  19:2
check (1)
  3:15
chosen (1)
  21:1
cited (1)
  7:18
claim (25)
  3:1,6,21;4:1,12;6:25;
  7:11,12;8:16;9:3,10,
  16;15:17,23;16:22,25;
  17:9,9,19;18:6,13;
  19:1;21:25;22:2,23
claimed (1)
  20:17
claiming (1)
  19:17
claims (9)
  2:24;6:1;13:17;
  15:16;18:7;19:21;
  22:24;23:19;24:16
class (1)
  13:13

clear (1)
  14:11
clearly (2)
  4:12;8:5
CLERK (1)
  24:12
client (11)
  4:24;8:23;9:25;10:9;
  14:1,16,25;15:4;20:15;
  21:13,15
client's (3)
  5:11;6:12;21:11
collective (4)
  13:16,24;14:14;
  15:11
colloquy (1)
  7:4
comment (15)
  10:16,21;11:4,5,7,11,
  16,20,21,22;12:2,16,
  18,24;13:2
comments (1)
  21:25;22:3
common (1)
  7:12
comp (1)
  7:14
company (1)
  12:1
compensation (1)
  2:25
compete (1)
  20:16
complained (2)
  4:11;10:23
complaint (41)
  3:12,15,16,25;4:11,
  17,21,23,25;5:1,4,12,
  14,19;6:4,7,21;7:9;
  8:20;9:17;10:2,24;
  11:8,10,19,21;12:16;
  13:6,10,13;16:9;17:8,
  11,13,15,24;18:5;24:8,
  10,15,18
complaints (3)
  3:8,16;5:10
complete (1)
  15:7
conceded (2)
  4:20;8:2
concern (1)
  6:8
conference (3)
  2:13,17;9:7
confusing (1)
  21:8
connection (3)
  2:17;16:11;23:21
consider (2)
  18:12,25
considering (1)
  3:19
consistent (1)

(1) abilities - consistent

October 6, 2017

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

8:18
contact (1)
    10:7
contacted (1)
    3:13
contacts (1)
    3:18
contemporaneously (1)
    10:4
copy (2)
    6:6;8:1
counsel (6)
    2:2;7:4,19;13:25;
    19:22;21:5
count (3)
    7:7;18:24;19:18
counted (1)
    23:15
Country (1)
    2:5
COURT (77)
    2:2,7,12,19,21;3:5,
    11,18,25;4:4,9,17;5:2,
    16,24;6:2,18;7:5,8,15;
    8:2,6;9:2,21;10:13,19;
    11:1,14,23;12:5,15;
    13:1,10;14:6,8,17,19,
    24;15:2,15,21,24;16:1,
    8,14;17:3,23;18:17,20,
    23;19:5,8,24;20:1,9;
    21:5,7,17,20,22;22:5,
    11,18,23;23:4,6,8,10,
    14;24:4,8,10,13,18,21,
    25;25:9
covered (2)
    15:10;25:3
create (1)
    11:8
Cummis (1)
    2:9
cure (1)
    8:21

**D**

dare (1)
    20:5
date (1)
    22:8
dated (1)
    8:13
David (2)
    2:8;13:9
days (7)
    14:13;17:24;23:10,
    25;24:4,11,25
deal (3)
    7:1;19:6;25:6
December (1)
    20:18
decide (1)
    6:9
decision (1)

11:13
defect (1)
    8:21
defendant (14)
    4:5,10,18;5:7,9,18;
    10:7;12:21;13:11;14:2,
    18;16:11,11,16
defendants (5)
    2:10;3:2;17:12;18:8;
    20:7
defendant's (3)
    2:23;5:7;19:20
defense (1)
    13:25
delineated (1)
    3:12
delineates (1)
    3:15
department (1)
    5:8
deposition (8)
    5:11;6:12,13;10:10;
    11:11,20,25;18:10
deprive (1)
    3:3
DEPUTY (1)
    24:12
derogatory (2)
    12:13,17
Deroui (2)
    10:16,19
described (1)
    22:21
designed (1)
    12:25
detailed (1)
    4:24
different (2)
    5:17;12:10
directed (8)
    10:19;11:6;12:17,19,
    19,20,23;13:3
director (1)
    12:7
disagree (2)
    12:22;19:25
discharge (1)
    17:5
disclose (1)
    5:18
disclosed (2)
    6:14,16
discovery (2)
    8:22;14:12
discriminated (1)
    5:13
discrimination (17)
    3:4;4:2,2,8,14,15;
    8:15,15;11:10;13:22;
    15:23;16:25;17:6,8,10;
    18:14;22:12
discriminatory (1)
    3:10

discuss (1)
    17:20
discussed (2)
    13:25;17:7
dismiss (4)
    9:4;18:4;24:16,23
dismissal (1)
    24:6
dismissed (2)
    7:22;23:20
distinction (2)
    21:23;22:6
distinguishing (1)
    21:17
doctrine (2)
    11:3,4
document (1)
    10:11
documents (3)
    2:14;13:21;14:11
done (1)
    23:1
drawn (1)
    22:6
draws (1)
    21:23
drink (1)
    22:20
during (8)
    7:4;8:22;10:10;
    11:25;16:23;17:18,21;
    18:10

**E**

EEO (1)
    3:25
EEOC (7)
    4:21;7:25;8:20;10:1,
    23;15:4;16:9
EEOC's (1)
    8:10
either (3)
    6:12;13:6;18:10
else (2)
    2:16;25:6
emails (3)
    6:17;10:11,11
employed (1)
    5:18
employees (2)
    14:20;21:16
employer (2)
    10:5;12:1
employment (2)
    6:15;16:7
engage (1)
    25:2
enough (1)
    5:12
entering (1)
    20:23
entire (1)

14:9
environment (9)
    3:6;19:14;20:10,11,
    25;21:2;22:14;23:17,
    19
equal (1)
    3:3
ethnicity (12)
    4:15;5:20,25;6:4,23;
    8:4,17;10:1;17:9;18:7;
    19:3,11
even (1)
    20:20
evidence (1)
    11:9
Exact (1)
    11:22
exactly (4)
    3:15;9:8;13:4;23:24
example (2)
    22:7,19
exclusivity (1)
    7:14
exhaust (2)
    4:5,20
exhaustion (3)
    8:16;9:23;18:15
existing (1)
    15:11
expect (1)
    18:1
experiences (1)
    14:3
explicitly (1)
    13:3
expressly (2)
    3:12;7:16
extent (3)
    9:25;10:6;19:18

**F**

face (1)
    12:17
fact (14)
    5:3,6,18,20;13:12,
    16;14:1;15:9;16:6,19,
    25;21:11;22:7;23:20
facts (2)
    17:16;18:6
factual (3)
    6:11;9:16;18:9
failed (1)
    4:5
Fairmont (1)
    5:7
falls (2)
    19:4;22:11
familiar (1)
    11:15
far (3)
    8:25;12:19;14:3
fashions (1)

20:25
February (1)
    15:5
female (1)
    21:16
ferociously (1)
    22:21
field (1)
    21:1
file (4)
    6:8,20,20;18:23
filed (2)
    4:1;15:4
filing (5)
    18:22;19:2;24:5,8,10
fine (3)
    19:5;24:25;25:1
fire (2)
    16:11,21
fired (1)
    15:18
firm (1)
    2:9
first (1)
    9:2
five-month (3)
    15:7,13;16:4
flipping (1)
    10:13
focus (1)
    23:4
food (1)
    12:8
form (1)
    12:11
formed (1)
    11:12
forth (1)
    20:4
Forty-five (1)
    24:4
forward (3)
    9:11;18:13;23:19
four (1)
    20:14
fourth (2)
    7:10,21
freely (1)
    21:1
freestanding (1)
    7:11
front (2)
    6:5;16:9
furtherance (1)
    3:4

**G**

gender (12)
    4:8;6:1;8:15;16:25;
    19:19;21:4,10,18;22:3,
    12,15,25
gender-based (1)

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

19:15
given (3)
16:23,23;17:1
glass (1)
22:22
Good (4)
2:7,8,12;20:20
Gordon (1)
2:4
grandson (1)
24:2
grant (1)
17:22
great (1)
20:19
Gross (1)
2:9
groups (1)
12:8
guess (14)
2:22;4:17;5:2;11:14,
17;12:5;13:1,5;14:9,
24;15:15;16:10;17:14;
20:9

**H**

Haesloop (72)
2:4,4,17,18,22;3:1,7,
14,20;4:3,7,15,24;5:9,
22,25;6:16,24;9:10,14;
10:12,18;11:17;12:3,6,
22;13:8,20;14:7,11,18,
23;15:1,3,18,22,25;
16:13,14,19;17:6,20;
18:6,16,25;19:7,16,25;
20:8,11;21:4,6,15,19,
21;22:4,10,16,19;23:3,
5,7,9,13,24;24:7,9,15,
17,20,24;25:7
Haesloop's (1)
2:15
hand (1)
22:22
happen (1)
23:21
happened (1)
9:10
happening (1)
3:22
happy (1)
8:25
harass (1)
21:14
harassment (11)
4:13;13:22;19:16,18,
19;20:4,22;21:9,15,20,
25
head (1)
13:14
hear (1)
15:2
heard (1)

10:25
helps (1)
18:19
hierarchy (1)
12:7
hired (1)
20:14
hiring (2)
15:7,9
Honor (11)
2:8,20;7:3,15,19;8:1;
10:25;16:2;18:18;20:3;
25:8
hopefully (1)
9:9
hostile (9)
3:5;19:14;20:10,11,
25;21:2;22:14;23:17,
18
Hotel (1)
20:14
Hotels (1)
2:10
HR (6)
3:8,23;4:11;10:22;
12:13;17:2
human (5)
3:13;5:7,19;10:8;
11:25

**I**

idea (1)
15:12
identified (1)
8:7
identify (1)
2:2
immediate (1)
3:23
impact (2)
13:17;15:16
implicating (1)
12:21
improve (1)
20:21
inadequate (1)
3:9
incidents (1)
23:16
include (2)
4:1,8
included (1)
13:22
incorporated (1)
14:15
indicate (2)
5:14;11:12
indicated (3)
4:12;6:24;9:10
informed (1)
14:5
informing (1)

8:21
insertion (1)
18:6
insidious (1)
20:25
instance (1)
12:12
intimidation (1)
23:6
into (3)
14:15;18:14;21:3
investigate (1)
8:21
issue (9)
5:20,21,22;6:5;9:22;
11:16;14:20;18:8;21:7
issued (2)
8:12,12
issues (3)
4:10;9:8;25:3

**J**

Jewish (9)
5:13;13:7,7,8;16:23;
17:12;18:9;19:3,4
joint (1)
18:21
journal (7)
4:25;5:5,6,10;8:22;
10:4;18:11
judgment (1)
2:22
juncture (1)
24:21

**K**

Kenniff (1)
2:5
kept (2)
4:25;18:11
kind (2)
16:5;19:4
knew (3)
13:6;16:6;18:8
knowledge (1)
5:5

**L**

language (1)
19:9
law (9)
7:12,13,20;8:18;
9:15,23;16:15;18:15;
21:22
laws (1)
2:25
lead (1)
20:16
least (5)
3:22;5:12;12:16,19;

21:8
leaving (1)
20:24
legal (6)
9:19;11:15;17:3;
18:12;22:7;23:12
legitimate (1)
16:17
letter (11)
2:15,16;7:17,18;
8:13;9:1;16:3;19:17;
21:12;22:13;23:12
letters (2)
9:4,5
little (1)
21:8
LLC (2)
2:10,11
Local (1)
15:12
look (15)
6:9;7:9,10;9:21,23,
24;10:3;11:18;13:13;
17:15;19:5;20:1;23:18,
20,22
looking (2)
6:22;23:21
lucrative (1)
20:16

**M**

maintain (1)
22:14
maintaining (1)
9:19
making (2)
5:19;12:12
manual (1)
15:9
many (1)
11:2
Maryland (1)
2:11
matter (6)
11:15;17:3;18:12;
22:7;23:12,22
matters (1)
6:14
may (13)
5:16;6:9;7:4,5;9:15,
17,18;10:14;12:22;
13:5;18:1,18;22:23
maybe (1)
10:15
mean (10)
4:9;8:3,4;9:4;10:16;
11:15;13:1;19:10;
21:12;22:24
means (1)
20:6
meeting (1)
17:2

member (1)
14:4
men (2)
20:15,17
mentioned (2)
10:11;18:10
meritorious (1)
11:8
might (3)
6:20;10:25;24:16
mind (1)
13:15
Mineola (1)
2:5
missed (1)
10:14
mixing (1)
22:20
moment (1)
4:22
more (2)
4:16;20:16
morning (3)
2:7,8,12
most (1)
19:15
motion (6)
2:22;6:9;9:6;18:4;
24:23;25:5
move (1)
18:2
much (2)
10:21;25:9
multiple (1)
22:17

**N**

names (1)
20:22
national (2)
8:9;19:3
nature (3)
9:6;20:9;22:1
necessarily (3)
10:19;12:19;21:22
necessary (2)
17:4;24:14
need (6)
8:20;9:8,11;16:16;
25:3,6
needs (1)
19:19
negligence (3)
7:7;9:2;19:11
negligent (4)
2:24;7:11;9:18;19:1
New (2)
2:6;15:12
next (1)
17:23
nexus (1)
11:6

non (1)
    22:1
none (1)
    7:23
nonmoving (1)
    7:17
nonresponse (1)
    7:21
note (1)
    7:15
notice (6)
    4:10,19;5:10;8:12,
    19;10:7
notification (1)
    18:24
November (2)
    24:12,13
number (2)
    17:7;23:15
numerous (1)
    20:12

**O**

o0o (1)
    25:10
object (1)
    18:1
objections (1)
    18:2
obligation (1)
    7:16
obviously (7)
    4:9;6:8;13:5;17:17;
    18:3;19:10;20:17
occasions (2)
    20:12;22:17
occurred (3)
    3:24;6:14;10:9
October (3)
    2:15,16;24:3
off (2)
    13:14;25:2
Old (1)
    2:5
once (1)
    6:9
one (16)
    9:5;11:11;12:9,12,
    16,18;13:2;16:24;
    17:10;19:13,21;20:15;
    21:5;22:19;23:2;24:1
only (8)
    4:12;5:6,10;11:2,9,9;
    12:22;13:24
opened (1)
    20:14
operation (1)
    20:21
opportunity (1)
    3:3
opposing (1)
    19:21

order (1)
    9:9
orientation (1)
    13:21
origin (2)
    8:9;19:3
others (1)
    10:8
out (8)
    5:12;6:6;7:1,2;11:5,
    16;22:24;24:7
outside (1)
    13:9
over (1)
    3:17
overcome (2)
    10:1,6
overhear (1)
    12:25
overlap (1)
    12:9
overlooked (1)
    15:4
overlooks (1)
    15:9
own (4)
    12:12;15:6,8,13

**P**

page (3)
    11:24;19:16;20:3
pages (1)
    11:3
paragraph (3)
    7:16;8:14;10:15
parcel (1)
    3:2
parse (1)
    22:24
part (6)
    3:2,5;4:9,10;11:13;
    14:6
particular (3)
    9:24;10:3;11:18
parties (3)
    2:14;7:1;18:4
party (1)
    7:17
passes (2)
    23:16,23
pattern (2)
    3:2,4
PC (1)
    2:9
people (2)
    19:15;21:13
perception (1)
    13:12
perhaps (1)
    10:9
period (13)
    13:19;14:3,5,13,21;

15:8,13,19;16:4,17,24;
    17:18,21
permitted (1)
    21:1
person (2)
    6:16;13:13
personality (2)
    21:11,13
personalty (1)
    20:5
physical (1)
    22:16
physically (2)
    20:23,24
plain (1)
    8:14
plainly (1)
    15:10
plaintiff (13)
    2:5;3:3;4:5;10:20,
    22;11:6,10,25;13:6,18;
    17:12;18:23;20:3
Plaintiff's (2)
    7:19;18:22
plays (1)
    11:16
Plaza (3)
    2:10;15:11;20:14
pleadings (2)
    23:17,23
pleads (1)
    19:14
please (1)
    2:2
pled (1)
    7:20
point (5)
    11:5;16:15,18,19;
    23:15
pointed (1)
    16:17
policies (1)
    13:22
policy (1)
    13:22
position (4)
    15:25;16:2,3;20:17
possibility (1)
    9:25
predicate (1)
    8:16
preempted (1)
    2:24
prejudice (1)
    18:24
premotion (1)
    2:13
prepare (1)
    17:24
presence (1)
    10:20
pretext (2)
    15:22;17:5

pretextual (1)
    16:3
pretty (1)
    8:2
preventing (2)
    20:23,24
principally (1)
    9:5
print (1)
    6:6
prior (1)
    14:3
pro (1)
    22:8
probably (1)
    5:22
probation (2)
    15:7;16:22
probationally (1)
    16:21
probationary (12)
    13:19;14:2,4,13,20,
    21;15:13,19;16:4,17,
    24;17:5
problem (1)
    9:18
process (1)
    14:9
processing (1)
    4:10
produced (1)
    8:22
professed (1)
    20:18
pronounce (1)
    10:17
propose (2)
    19:9;24:22
proposed (1)
    2:22
protected (2)
    3:19;13:13
provide (1)
    14:1
provided (1)
    14:12
purpose (2)
    9:4,12
pursuant (1)
    14:13
pursue (1)
    7:13
pursuing (1)
    19:22
put (2)
    10:7;20:4
putting (1)
    8:19

**Q**

qua (1)
    22:1

quid (1)
    22:8
quo (1)
    22:8

**R**

race (5)
    4:2,8,13,16;8:8
raise (1)
    5:20
raised (3)
    6:4;10:1;17:17
Raiser (1)
    2:5
read (2)
    16:9;21:12
reason (7)
    15:19,20;16:12,17,
    23;17:1,1
reasons (1)
    16:23
recall (4)
    3:12;6:3,22;10:14
received (3)
    13:21,23,24
recently (1)
    13:24
recommend (1)
    18:21
recommendation (1)
    18:18
record (2)
    2:3
reference (1)
    7:12
referred (2)
    11:20;13:23
referring (2)
    20:6,22
reflect (1)
    6:13
reflected (1)
    4:25
regard (15)
    2:23;3:11,18,25;4:6;
    9:22;10:6;13:14;14:20;
    15:15;17:8,9;18:3,7;
    22:23
relates (2)
    18:15;19:19
relating (1)
    6:23
relative (1)
    17:8
religion (3)
    8:8;10:1;16:25
religious (2)
    11:10;17:9
remaining (1)
    24:24
remains (1)
    24:22

TINA MICHELLE BRAUNSTEIN, v.
SAHARA PLAZA, LLC, THE PLAZA HOTEL,

October 6, 2017

remarks (1)
    12:13
remedies (3)
    4:5,20;8:17
remember (1)
    8:3
removal (1)
    18:5
remove (1)
    17:18
reported (1)
    5:7
reporting (1)
    3:21
represent (1)
    2:9
representatives (1)
    20:7
request (1)
    23:25
requested (1)
    13:25
requests (1)
    12:10
required (1)
    3:22
requires (1)
    19:2
Resorts (1)
    2:10
resources (5)
    3:13;5:7,20;10:8;
    12:1
respect (6)
    7:25;8:8,17;16:24;
    18:25;19:1
respond (2)
    2:23;4:4
response (3)
    3:22;12:14;16:18
responses (1)
    3:9
responsive (1)
    7:17
retaliation (2)
    3:21;8:8
review (2)
    2:14;17:21
right (21)
    2:12,19,21;4:21;6:2,
    18;8:12;11:23;12:7;
    14:19,24;15:8;16:13;
    19:8;20:1;22:5,18,22;
    23:10;24:4;25:9
Road (1)
    2:5
Rosen (34)
    2:8,8,19,20;6:8,20,
    22;7:3,6,9;8:4,7,9:14,
    20;10:25;11:2,19,22;
    15:2,3;16:2;17:17,20,
    25,25;18:18,21;19:9,
    13;20:3;21:2;24:14,22;

25:8
Rosen's (2)
    2:15;23:14
rubric (1)
    22:12
rule (1)
    7:16
ruling (2)
    9:9,15
rushed (1)
    22:20

S

Sahara (2)
    2:10;14:16
same (6)
    11:11,21,22,24;15:6;
    18:15
saying (16)
    4:19;5:12;9:13;
    14:25;21:8,9,12,23,24;
    22:2,8,13,13;23:1,11;
    24:16
schedule (2)
    24:23;25:1
second (3)
    19:14,16,18
seems (1)
    16:8
sense (1)
    6:19
separate (7)
    7:23;8:13;12:8;
    14:14,17;17:4;21:10
servers (1)
    22:17
seven (1)
    11:3
several (1)
    9:5
sex (1)
    8:7
sexual (8)
    4:13;13:22;19:17;
    20:4;21:9,15,20,25
share (2)
    17:24,25
shift (1)
    22:9
short-circuit (1)
    6:10
sign (1)
    25:2
signed (1)
    15:5
Sills (1)
    2:9
simply (2)
    18:22,23
sine (1)
    22:1
situation (1)

20:13
so-called (1)
    11:9
solely (1)
    8:15
somehow (1)
    18:11
someone (2)
    12:1;14:20
sorry (2)
    14:17;21:6
sort (4)
    10:20;11:17;21:11,
    18
sound (1)
    18:9
sounds (1)
    6:24
speak (1)
    21:5
specific (1)
    6:3
specifically (3)
    12:18,23;18:8
spell (1)
    5:12
staff (1)
    15:12
stage (2)
    9:3,16
standard (1)
    8:11
standpoint (3)
    9:19;23:17,23
Star (1)
    13:9
start (1)
    7:6
started (1)
    20:22
starting (2)
    20:18;23:25
starts (1)
    14:21
state (1)
    4:11
stated (1)
    19:22
statement (2)
    15:4,8
statements (2)
    15:14;22:15
states (2)
    7:16;15:10
statute (1)
    7:12
stay (1)
    24:18
step (1)
    6:13
stereotypical (1)
    12:18
still (5)

9:17;18:1,1;22:11,13
stipulations (1)
    24:6
stray (3)
    11:4,5,16
streamline (1)
    18:19
strong (1)
    21:13
subject (2)
    11:7;16:4
submit (3)
    7:19;8:19;19:9
submitted (1)
    4:7
sue (1)
    8:12
sufficient (5)
    4:19,22;10:6;13:2;
    18:13
suggest (1)
    6:3
suggestions (1)
    20:21
summarily (2)
    7:22;9:3
summary (1)
    2:22
supervision (5)
    2:24;3:1;7:11;9:18;
    19:1
supervisor (4)
    3:23,23;12:4,12
supervisors (3)
    3:8;12:9;20:13
support (1)
    3:20
supports (1)
    18:7
sure (16)
    4:21;7:5;10:2,16,16;
    11:20,23;13:2;17:13;
    20:5;21:22;22:6;23:12,
    14;24:15;25:1
sustain (1)
    18:13
sustainable (3)
    5:23;6:1,25
sustained (2)
    16:21,24

T

talk (2)
    2:21;9:2
termination (1)
    17:2
terms (2)
    8:10,15
testified (1)
    10:10
testimony (3)
    5:11;6:13;11:24

though (3)
    9:24;21:9;22:25
three (3)
    12:8;20:15,17
tied (1)
    21:3
times (1)
    12:10
Tina (1)
    12:23
Title (2)
    8:17;19:2
today (5)
    2:18;5:1;9:10;17:7;
    25:8
today's (1)
    2:17
told (3)
    15:7;17:13;20:15
top (1)
    13:14
towards (1)
    11:6
Trade (1)
    15:12
training (1)
    13:21
trial (1)
    23:25
true (1)
    15:6
Tuesday (1)
    24:1
turns (1)
    24:7
two (1)
    9:7

U

unaware (2)
    10:5;14:25
under (3)
    14:4;15:18;19:2
understood (1)
    8:14
unfortunately (1)
    15:3
uniform (2)
    7:13;13:9
union (5)
    14:2,4,6,18,19
unknown (1)
    13:20
unless (1)
    21:3
unopposed (1)
    18:23
up (5)
    7:4;12:3;16:16;19:8;
    23:15
upon (3)
    5:5;15:6;22:3

## V

vacation (1)
24:2
VII (2)
8:17;19:2

## W

way (7)
7:20;10:17,22;12:21;
13:17;17:6;19:18
week (1)
24:1
weren't (2)
21:25;22:7
what's (1)
21:8
whole (1)
5:14
Williams (3)
6:6;24:5,11
wish (1)
18:1
withdrawal (1)
18:24
withdrawn (1)
19:20
within (3)
19:4;22:11;24:25
without (2)
5:12;24:19
woman (4)
5:14;16:22;20:15;
23:8
wondering (1)
7:6
words (13)
3:7,13;4:20;6:10,19;
12:20;13:18;15:6,16;
16:15;21:10;23:1,18
work (13)
3:6;12:20,21;15:10;
19:14;20:10,11,25;
21:1,2;22:14;23:17,18
worked (1)
6:25
workers' (2)
2:25;7:14
working (1)
22:20
worn (1)
13:9
writing (1)
19:22

## Y

year (1)
24:2
York (2)
2:6;15:12

## 1

10-day (1)
23:25
15 (1)
8:13
150 (1)
14:13
150-day (1)
14:2

## 2

2 (3)
7:16;8:14;20:3
2016 (2)
8:13;15:5
20th (2)
24:12,13
2nd (1)
2:15

## 3

30 (2)
17:24;23:10
300 (1)
2:5
31st (1)
24:3
33 (1)
10:15

## 4

45 (3)
23:25;24:11,25
4a (1)
7:16
4th (1)
2:16

## 8

8 (1)
15:5