United States District Court
Southern District of New York

Tina Michelle Braunstein

    Plaintiff

-against-

Sahara Plaza LLC and the Plaza Hotel,
a Fairmont Managed Hotel, et al

    Defendants

Tina Michelle Braunstein's response to Defendant's statement of undisputed material facts pursuant to local civil rule 56.1 in opposition to Defendant's motion for summary judgement

16 CV 08879



Tina Michell Braunstein herby responds to Defendants statement of undisputed facts in corresponding numbered paragraphs as follows:

1. Plaintiff Does Not Dispute

2. Plaintiff Does Not Dispute

3. Plaintiff Partially Disputes

   Defendants violated the agreement when they harassed, discriminated and retaliated against Ms Braunstein. Defendants also violated Union Contract when they did not pay Plaintiff properly, which the requested account will show.

4. Plaintiff Disputes

   Ms Braunstein was not notified of a separate agreement until Mr Hunts (former Assistant of Human Resources) Deposition on September 28, 2017. Plaintiff's former attorney Mr Haesloop, pointed out that he never received a copy of that separate agreement. Plaintiff asserts that this agreement is not a license to harass, discriminate or retaliate against ms Braunstein
   HUNTS DEPO  PAGE 85  LINE 6 - LINE 16
   SEE BRAUNSTEIN DECLARATION EXIBIT #1

5. Plaintiff Partially Disputes

   Defendant's are not allowed to harass, discriminate, or retaliate against Ms Braunstein during the probation period regardless if there is or is not a union contract.

6. Plaintiff Partially Disputes

   Defendants collective bargaining agreement is not a license to harass, discriminate or retaliate against Plaintiff.

7. Plaintiff Partially Disputes

   Correct Plaintiff signed the Discrimination & Harassment policy. Defendants failed to conduct their separate Discrimination & Harassment lecture & workshop during Ms Braunstein's employment even thought Defendants scheduled & cancelled by Defendant's each time, including March 9th 2015 from 1-5pm as Plaintiff made note of in her EEOC complaint entered on September, 11, 2015
   SEE BRAUNSTEIN DECLARATION EXIBIT 2

8. Plaintiff Partially Disputes

   Defendants are greatly down playing Mr Douri's (most senior manager) role and level of daily contact with Ms Braunstein. According to Mr Mariano's testimony asking who was Plaintiff's senior manager "...I would say Amin (Douri) who was the most senior manager on the floor at that time".
   On December 25, 2014 Ms Braunstein wrote an email about Mr Douri's lack of professionalism and acting misogynistic towards her due to the severity of the continued harassment. This complaint was dead ended.
   MARIANO DEPO PG 122 LINE 5 - PG 123 LINE 8
   SEE BRAUNSTEIN DECLARATION EXIBIT 3

9. Plaintiff Undisputed

10. Plaintiff Undisputed

11. Plaintiff Disputes

    On numerous occasions during her employment Ms Braunstein requested to find out who was the "senior' bartender and what exact privileges did that role entail.
    BRAUNSTEIN DEPO PG 130  LINE 9 - PG 131  LINE 2
    SEE BRAUNSTEIN DECLARATION EXIBIT 4

12. Plaintiff Partially Disputes

    Ms Braunstein concurs that Ms Paradis acknowledged Plaintiff's email something Plaintiff appreciates. Unfortunately Ms Braunstein was forced to be alone with the Taylor who had made inappropriate remarks about her during the delivery and final fitting of her uniform jacket, making Plaintiff very uncomfortable and going against Ms Braunstein's original request to not be put in a situation to be alone with him again.
    BRAUNSTEIN DEPO  PG 172 LINE 18 - PG 173  LINE 6
    SEE BRAUNSTEIN DECLARATION EXIBIT 5  (a-b)

13. Plaintiff Partially Disputes

    Ms Braunstein wrote an email on December 8, 2014 about the incident on December 6th with Mr McSorley (Long term morning bartender) which Mr Mariano did not elevate to an official complaint of harassment charge as requested by Ms Braunstein since
    Mr McSorley was physically preventing her from setting up her station to be able to do her job. Furthermore, Mr McSorley was creating a hostile situation by literally getting into Ms Braunstein's face yelling at her.
    Mr Mariano responded by email " Thank you for taking the time to report this to me in such detail. I am appalled by the kind of behavior that you have experienced and I assure you this will not be tolerated. I only wish that I had been there to diffuse this unnecessary situation"

Over a year past her termination, Plaintiff came to learn upon receiving her now closed EEOC file, that Mr McSorley accused her of saying to him to "Go Fuck Yourself" during that same incident. Ms Braunstein maintains that she was never given the opportunity to answer that false and slandering charge. Instead Management used Mr McSorley's complaint heavily against her and internally amongst themselves started emailing that Plaintiff was "aggressive & not a team player" without Ms Braunstein's knowledge. Mr Mariano (former Head of Food & Beverage) stated in his Deposition that he did speak with Ms Braunstein about her foul langue, but that, he did not take any notes as he did extensively for Mr McSorley's statement. Mr Mariano stated that it is 'implied' (his word) that he shared this derogatory remark with Ms Braunstein a new hire.

Ms Braunstein maintains that during any and all of her complaints to management, that she was not treated the same as her male colleagues. Her complaints, no matter how serious were all dead ended. Defendants did anything in their power to discredit Plaintiff without letting her know what was allegedly being said or allowing her a chance to defend herself. This is the same experience that the other several women coming forward claiming sexual harassment have stated in their 50 page complaint with their Attorney Mr Goodstadt. Index 18 cv 01266.

Mr Mariano also agreed with Ms Braunstein regarding that situation with Mr McSorley in his deposition  'Look I think Tina was rightfully upset and I don't think Edmund (McSorley) handled it in a professional way"

BRAUNSTEIN DEPO  PG 177 LINE 7 - PG 178 LINE 9
MARIANO DEPO  PG 170 LINE 5 - PG 179  LINE 15
MARIANO DEPO PG 182  LINE 15-18
SEE PLAINTIFF'S DECLARATION EXIBIT 6  (a-c)


14. Plaintiff partially Disputes

    Ms Braunstein was never "interviewed" as they claim, Defendants used her email as her statement. She stepped in the Human Resource (HR) office to see how her charge of harassment was progressing, and was asked casually by either Mr Hunt or Ms Stabile (former Head of HR) if Mr McSorley had "calmed down" towards her. Management did not elevate Plaintiff's complaint to an official charge of harassment as Ms Braunstein expected, due to the hostile and aggressive scene Mr McSorley caused for over an hour, in front of the Palm Court bar's guests. Defendants dead ended Plaintiff's complaint.

    Additionally Ms Braunstein maintains that she knows nothing of Mr Marini (bartender on her team) witnessing and commenting negatively against Ms Braunstein, as she was confronted with his claim during her employment. Plaintiff finds it very questionable how HR handled this situation and immediately turned against Ms Braunstein without being to defend herself. She also wonders if this alleged witness Mr Mariani, who was hired to start this new bar project along with Ms Braunstein. Plaintiff wonders if this alleged witness's negative response against Ms Braunstein was solicited as Mr Mariani was third in line for "Seniority" behind Ms Braunstein, an undisputed more advanced Bartender with over twenty years of experience.

    Mr Marini is one of the 8 all male witness list Defendants Council produced. Plaintiff finds it questionable as to why Mr McSorley is not on that list, considering they are claiming she told him to "Go Fuck Yourself"

SEE PLAINTIFF'S DECLARATION EXIBIT 7 (a-c)

15. Plaintiff Disputes

    Ms Braunstein does not have an Uncle that is an Attorney and does not know why McSorley claims that she said that. Ms Braunstein vehemently denies saying to Mr McSorley (long term employee) "You don't know who your messing with, Go Fuck yourself" during that December 6th incident that Mr McSorley was interviewed at on December 10th by Mr Mariano, whom took extensive notes.
    Ms Braunstein vehemently denies ever being hostile and/or aggressive, as that is neither in her character or how she comes across professionally. As proof she is submitting a stellar letter of recommendation from her former employers from a job she had for about a year following her employment at the Plaza.

    Ms Braunstein worked for the first time in her career, as a Brand Ambassador with WhistlePig Rye, one of the worlds top whiskeys in the competitive New York City market. In her letter of recommendation on company letter head, her direct boss wrote " I had the honor of working closely with Tina…" "…She displayed great motivation, responsibility, and a self-starting work ethic" "Tina was always commented in the highest degree by retailers …"

    Ms Braunstein (a new hire) believes that once she wrote that email accusing Mr McSorley of harassment on December 8th, that management learnt that she was not a female that they can easily harass as that is the culture of their environment and that this knowledge on their part was the beginning of the end for her employment. That they kept Plaintiff in her role behind the bar 138 days of her 150 day probation period was because she is a high earner and had vast expertise and success in setting up new bars during her career, and this was a newly designed bar at the Plaza Hotel.

    BRAUNSTEIN DEPO  PG 179  LINE 3-6
    SEE PLAINTIFF'S DECLARATION EXIBIT 8 (a-b)

16. Plaintiff Disputes

    Ms Braunstein denies using foul language at work, and Plaintiff has no way of knowing if Mr Marini (bartender on her team) complained that she was 'aggressive, bossy and used foul language' as she was never informed this during her employment and has concerns that management fabricated or even solicited this from a new, less experienced Bartender, to make Ms Braunstein look bad, and have cause for termination, down the line, before her probation period ended.

    Mr Mariano (former Head of Food & Beverage) testified in his past, that he has sat down with employees, bringing the two together, to work through issues they may be having with each other. Yet, he did not allow Ms Braunstein the same curtesy, with anyone that Defendants are claiming was criticizing Ms Braunstein.

Mr Mariano said *several times* during their meeting on January 15, 2015 to discuss her one and only performance review, that Plaintiff recorded on her iPhone, that he needed to have (personally conduct) a bar meeting and a separate cocktail server meeting then a third with everyone to figure out what is going on here and work through any issues.

This meeting never happened during Ms Braunstein's remaining employment even thought there were 56 days left until they fired her, once again not allowing Plaintiff to address her alleged accusers of their alleged complaints against her. She wonders if the promised meeting did not happen because the Defendants solicited complaints against her or if these alleged complaints were fabricated by management or staff.

In the meeting with Mr Mariano & Plaintiff, he stated that there is a consensus that she is 'difficult' to work with. Later saying "…There appears to be misunderstanding here" once again repeating the need for group sit down meetings. Never did he accuse nor mention, that Ms Braunstein used foul language towards anyone.

Plaintiff maintains that these 'complaints' against her by fellow staff are false, and malicious by the management to discredit her. There is not one written complaint against her until *after* she had to write that email reporting the harassment against her by Mr McSorley, a long term employee. Then management and HR emailed internally that she was a problem.

MARIANO DEPO PG 48 LINE 21 - PG 49 LINE 20
SEE PLAINTIFF'S DECLARATION EXIBIT 9


17. Plaintiff Disputes

    The contents of this email from Mr Widnersson (Bar Manager) to Mr Mariano (former Head F&B) and Mr Hunt (former Assistant of HR) were never disclosed to her.
    This email was sent about five days after Ms Braunstein emailed her complaint charge against Mr McSorley.

    Mr Mariano stated in his Deposition 'And like I said, Tina and I had a good relationship relationship. She raised some valid points, issues, and we were able to take care of. She raised her disappointments and we were able to talk them through"

    MARIANO DEPO  PG  246  LINE 3-7
    SEE PLAINTIFF'S DECLARATION EXIBIT 10  (a-b)


18. Plaintiff Partially Disputes

    It was Ms Braunstein that asked to sit down with Mr Mariano & Mr Widnersson, her bar manager to discuss *his* commenting that all Ms Braunstein does is complain, as she was sharing ideas how to improve the bars service. Mr Mariano requested that she bring a "witness" and not a "delegate" as stated by Defendants council. Mr Trevor Sherman (Mr Chatwell, owner of the hotel's right hand employee)

Ms Braunstein became aware that allegedly notes were taken of that December 18, 2014 meeting when she received a copy of her closed EEOC complaint, over a year after being fired. *No one at this point has testified that they are the Author.* Mr Mariano testified that they were not his notes. Plaintiff believes that since there is **no date stamped to prove** when
the note Dated December 18th was written and by whom, that they appear to be fabricated to look like the style Mr Mariano takes his note. Ms Braunstein believes this page of notes was written *post* her termination to make plaintiff look bad and justify firing her.

To clarify Plaintiff's assertion that it was a 'witness' and not a 'delegate' is not to let it sound like she had someone with real knowledge of the Union's rules in *her* called meeting with concerns over how her direct manager was suddenly treating her.

MARIANO DEPO PG 185 LINE 3 - PG  188 - LINE  18
SEE PLAINTIFFS DECLARATION EXIBIT 11 (a-b)

19. Plaintiff Partially Disputes

Mr Douri (Manager with seniority) was acting very unprofessionally towards Ms Braunstein by calling her inappropriate names as well as acting misogynistic towards her in vast contrast to how he acted towards the three males on the Bar Team. There would be a non stop condescending nature to how he spoke to her. Mr Douri showed favoritism to Mr Menite as he turned a blind eye to Mr Menite's chronic lateness, excessive drinking alcohol at work against hotel policy and allowed Mr Menite the much coveted 'point position' behind the bar. Mr Douri put Ms Braunstein in the 'Second station' the one due to it's location was the 'Bar Back" position. This Bartender was required to both carry their weight in directly attending guests at the bar to generate income, but, also be the person to run on and off the tight quarters that was this bar doing all the 'Bar Back' duties. The final station behind the bar was the 'Service' station responsible for making the drinks for the cocktail servers attending to the guests sitting at tables in this large . room. All Bartenders were required to assist each other when needed.

Mr Douri did the scheduling. Mr Widnersson (Bar manager) asked the team for their requested ideal schedule for their permanent schedule in a Union House. Both Plaintiff and Mr Menite received exactly what they requested with the two less experienced and least 'senior' Bartenders getting 3rd & 4th placement. A few weeks later Mr Menite changed his mind and demanded to take Ms Braunstein's lucrative Saturday night and against her protests, Mr Douri changed her set schedule.

On December 25, 2014 Ms Braunstein wrote a formal letter accusing to Mr Douri, sent through Mr Widnersson, as she did not have (Douri's) his email. Plaintiff stated that he was being unprofessional, and misogynistic towards her. Neither male manager answered her complaint. Mr Widnersson commented that he was off on December 23rd a date that Plaintiff email referenced quoting Mr Dour, so that Mr Widnersson would not comment on a situation he knew nothing about. Ms Braunstein requested that her Bar Manager look into the situation with Mr Douri and he refused.

On December 30, five days after getting nowhere with her male managers, Plaintiff reached out to one of the only women in HR and the only HR employee is give out her business card during orientation. The matter was never discussed, once again

Ms Braunstein's serious complaint against a male employee was dead ended. Mr Douri is the same manager that the hotel later on, promoted to General Manager of the Todd English Food Hall, and is alleged to have sexually groped one of the other women coming forward in the complaint Index # 18 cv 01266

MARIANO DEPO PG 122 LINE 5-25
SEE DEFENDANTS DECLARATION EXIBIT 12 (a-c)

20. Plaintiff Partially Disputes

Defendants are correct that Ms Braunstein testified that she responded favorably to Ms Paradi quick response and Ms Paradi saying, "I will follow up with you". Unfortunately, that is the last she heard anything about her complaint against Mr Douri, once again her complaint was dead ended. This is the same time period that Plaintiff learnt during Mr Mariano's Deposition, that the managers all weighted in on giving their assessment of Plaintiff for her one and only crushing written review, given, nine days later.

MARIANO DEPO PG 197 LINE 6-8
SEE PLAINTIFF'S DECLARATION EXIBIT 13

21. Plaintiff Partially Disputes

Ms Braunstein review was used as retaliation for her speaking out at work about the hostile and sexist environment that she was experiencing, and this is followed through by the next several women claiming sexual harassment, as we know that did not happen over night or in a vacuum, but, that is the deep seated culture of the Plaza Hotel. That sexual discrimination is a form of sexual harassment.

Ms Braunstein was given little to no feedback from Mr Widnersson as he presented her this crushing review. He would not answer her questions nor explain his assessment of her. Plaintiff was worried for her job, and was forced to run around, seeking guidance from Mr Hunt (Assistant HR) & Mr Mariano (Head of F&B) as what to do about getting Mr Widnersson to explain his mostly negative marks for Ms Braunstein, giving her a chance to improve. Instead he kept refusing. Plaintiff wrote her first letter asking for feedback on Mr Hunts direction, she emailed it later that night sending it at around 2:30 am on January 9, 2015.

Before her next shift, Ms Braunstein stepped into HR to ask Mr Hunt if there was a way to get that review removed from her permanent employee file, and he said no. But, she could write a rebuttal to attach to it. Mr Hunt once again suggested Plaintiff speak to Mr Widnersson about getting feedback. she expressed her frustration to Mr Hunt that was exactly what she did to no avail. Plaintiff ran into Mr Widnersson outside the HR office and once again her refused to give her any feedback even though he acknowledge receiving her email. Now, Plaintiff was feeling she was going nowhere and was getting the run around.

Plaintiff started her *second* letter to him saying "Dear Johan (Widnersson) to start we ran into each other outside of HR office, on Friday 1/9 after my meeting with Jennifer & Evan. You acknowledged receiving my email and said that you would not give me the bullet points in writing as I had requested, that all HR required from you was to fill out the form and talk to me, and that is what you did"

Ms Braunstein came to learn through obtaining her EEOC file, that both Mr Marini and Mr Menite who were given their reviews prior to Plaintiff, both, received written feedback Mr Widnersson on how to improve with their negative marks, where as, Plaintiff did not. Yet Plaintiff was marked "Below" Overall performance Summery, and both men were marked as "Meets"

Through 'Discovery' with Plaintiff's lawsuit, she came to learn at Mr Mariano's Deposition, that there is a suspicious second copy of plaintiff's review that does have written notes. **Nobody has testified to knowing who authored such notes.** Mr Mariano claimed it was not
him. The hand writing is barely legible and there is *no official stamp* entering it into her employee file. This is the now second, along with those unauthorized notes/bullet points discrediting Ms Braunstein. Once again, she questions if this was done post her firing to cover up the illegal treatment of her.

Disclosed at Mr Hunt's Deposition, was both HR & Managements mishandling of the proper filing of her review since it was " Below" standards. That it needed to be signed properly. <u>'Department Head'</u>   '<u>Human Resources</u>' & '<u> Review conducted by'</u> should all have been signed.

Ms Braunstein questions Mr hunt's honesty during his Deposition that he claimed to know nothing of Mr James Menite's drinking only that I made a verbal charge on March 13, 2015 when I was fired. Plaintiff has confirmation that Brian Van Flandern, the bar consultant that assisted in the hiring & training and Mr Menite's best friend was one of the people to get Mr Menite into a 28 day rehab. Mr Menite's stay was paid for by his health insurance through the hotel and staff worked 'overtime' to assist covering his shifts. Both Mr Marini and the female Bartender that replaced her, *the much younger*, Ms Sergeline (one of the several woman coming forward claiming sexual harassment) They both knew about Mr Menite being in rehab and they covered his shifts, during the approximate timeframe of Mid April to Mid to late May 2016. Mr Hunt remained the Assistant of HR until October 2016. Considering that 'overtime pay' is a huge deal it very suspicious that he claims not to know.

Ms Braunstein was marked negative for 'attendance & punctually' - both can be proven to be in correct with Plaintiff requesting the time clocks, they can also prove that her male colleagues were chronically late and calling out missing shifts without reprimand or being terminated.


"Team Player" was marked negative on Ms Braunstein's review, yet, on December 22, 2014 it was she and not Mr Menite that volunteered to work the 'Service bar' station once a week that Mr Rosa worked almost exclusively due to Mr Widnersson's direction with Mr Marini working it the other nights. They both expressed at our one and only bar meeting that they were frustrated and getting burnt out. Mr Menite refused to be scheduled to work 'service'  saying "I am the Lead Bartender, I am here to run the Oak Bar, I am not a service bartender" Mr Menite was not the Lead Bartender, yet went undisciplined

for not being a team player.

HUNTS DEPO  PG 64  LINE 22 - PG 65 LINE 23
HUNTS DEPO  PG 41 LINE  5 - PG  42   LINE 7
SEE PLAINTIFF'S DECLARATION EXIBIT 14  (a-h)


22. Plaintiff Partially Disputes

   Ms Braunstein was not treated the same as her male colleagues, Defendants further bullied and harassed her when they refused to give her the the same feedback and the same level of expectations. Apparently her male colleagues were held to a lower set of expectations. Plaintiff proved herself to be diligent and professional in asking all parties involved to help her get the needed and required feedback from the manager entrusted to deliver her review, the same as was done for her male colleagues. Plaintiff realizes that she was given the run around by HR and management none of them at this point said they would either help her find out what is going on with Mr Widnersson in discussing his perspective in what exactly he said to Plaintiff or stating right away let's schedule a follow up meeting with Plaintiff and Mr Widnersson.

   Ms Braunstein started her *first* letter to Mr Widnersson "Dear Johan, I am requesting in this email just as I did during my 60 day review on 1/8/15 bullet points for all the negative (marked no) comments."

   BRAUNSTEIN  DEPO  205 - 11-14
   SEE PLAINTIFF'S DECLARATION EXIBIT 15


23. On January 10, 2015 two days after Ms Braunstein's review, and as she was still running around seeking answers, Mr Mariano sent Mr Hunt, copied to others, an email that Roberto (Mr Rosa) had stepped into his office  to report that he was upset alleging that Ms Braunstein is not supporting him behind, by assisting him enough as he works the service bar. the bar, that she 'bossy and aggressive' and that Plaintiff is "all talk"

   Ms Braunstein definitely assisted all the male Bartenders as they shared equally in the division of their nightly tips, and that the long term success of the bar was important for all their futures. Plaintiff never heard complaints directed towards her from Mr Rosa that he needed more help. Ms Braunstein was also not inform of this email, another one from Management to HR complaining about her without allowing her a rebuttal.

   On iPhone recording that Plaintiff had with Mr Mariano on January 15th, five days prior to this meeting Mr Mariano states that Mr Rosa came into see him unhappy with his review. Mr Mariano tells him that management did not know if he was going to make it at the beginning, as he was struggling with the drinks and they were worried that he couldn't handle the pressure. He also says that both Tina (Plaintiff) and James (Menite) said that they would commit to help make Mr Rosa successful from early on. iPhone 12:50-13:20.


Once again, Management and HR are showing more concern for Ms Braunstein's male

colleagues than her, as she continues to run around trying to get feedback from her crushing review. They turned a blind eye to Mr Rosa being chronically late to work as well as abusing 'overtime' making sure to slow down his pace cleaning up for the extra money.

Ms Braunstein did everything in her power to assist a less experienced Bartender, one who was positioned by Mr Widnersson to work the 'service bar' because as stated at out December 22, bar meeting, that 'you are not yet strong enough to work the main bar" Mr Rosa was no doubt having a hard time being bested by a female. He wanted to work the main bar. Plaintiff was the only one on their team, to work all three stations, with praise from guests & staff regularly. Mr Rosa was fourth and thus last in line for seniority.

SEE PLAINTIFF'S DECLARATION EXIBIT 16


24. Plaintiff Partially Disputes

   On January 12th, four days after Ms Braunstein still has not gotten feedback from Mr Widnersson she had again stoped into HR to ask Mr Hunt if there was a way to get her review taken out of her employee file. He said 'no' but she could write a rebuttal to attach to it. She continued to seek answers as all management kept telling her to speak with her bar manager that gave her the review. She knew that her assessment was in correct, for one example, that she was oddly told that she 'disappears' from the bar. Yet in her roll as 'second station' she was required to run on and off the bar all night, as she continued to have a bank (a register) to ring in the orders and make the drinks for guests sitting in her station, considering how constantly she needed to run off of the bar Ms Braunstein did very well for the house, for her team and their guests alike.

   But, now out of left field she was being accused of not communicating when she stepped off of the bar. Ms Braunstein is not shy about communicating, each and every time she'd let the team know getting either a verbal or non-verbal, 'Bartender Nod' as confirmation. This simply was not true, no one had mention any dissatisfaction with her before for her lack of being a team player or not working hard pulling her share. Plaintiff volunteered to work all the stations, unlike her male colleagues.

   Plaintiff did all she could tapping into her over twenty year Bartending career, mostly as the Lead Bartender on the opening team of New York City's top restaurants, planting the seeds for long term success. Having to now run around begging actually begging for help getting feedback was demoralizing. Ms Braunstein also understood that her Bar Manager was in need of assistance being his first time in America and the intense Manhattan market.
   He just spent the prior two years managing a bar for Fairmont (managed the Plaza) working in Dubai, a much slower pace with much less pressure. She was working towards the long term success of this Bar, and hoping to be able to be part of the team for the Oak Bar as was mentioned during the interview process.

   Ms Braunstein stands by what she wrote in sheer frustration to her Bar Manager, who was not showing her the same respect that she showed him and that he showed her male colleagues and a select few of the all female cocktail serving team.

   The photos that Plaintiff added, taken around the time of her review, show that at least one week into January 2015, after three months of work that Mr Widnersson still hadn't figured out the nightly requisition, causing the bar team an extra hour during clean up,
      to run around to three different locations in the Palm Court Bar (ours) to make sure we
we did our jobs properly. In twenty five years of service I have never seen stock kept in such

a way that there was no order. Ms Braunstein opened two major restaurants during the holiday season, Teleran as the co-lead bartender and Bar Boloud across from Lincoln center, without having this issue. Here it is finally a slow week that first week on the year, and still it was not done. Three weeks later Mr Widnersson left the Plaza, heading home to Sweden. He was here for all of four months.

Approximately one month later Ms Braunstein was talking to talking to Mr Mariano about the article that just came out '<u>Speaking while female</u>' by Sheryl Sandberg & Adam Grant, because I really believed that is what was happening at the Plaza. I left a hard copy on his desk.

SEE PLAINTIFF'S DECLARATION EXIBIT 17 (a-b)


25. Plaintiff Partially Disputes

   Plaintiff believes she coved this answer above #24, and has shown that she was not given the same guidance and respect as her male colleagues.


26. Plaintiff Partially Disputes

   Plaintiff states that for the remainder of Mr Widnersson's employment, leaving at the end of January, he had still not created a system of keeping our expensive stock organized, even though our slow season is a great time for doing just that.


27. Plaintiff partially Disputes.

   Although Plaintiff did not state that in her January 12th email she did write in her January 9th email, repeating what was discussed at her review when she was told that Mr Douri, agreed with mr Widnersson's assent of her not being a team player, and how uncomfortable she was with mr dour weighing in since a short time ago on December 25 she wrote an email that Mr Douri was misogynistic and unprofessional towards her. Plaintiff believes at that time she spoke out about her concerns and was once again dead ended. it is implied at this point forward.

   SEE PLAINTIFF'S DECLARATION EXIBIT 18


28. Plaintiff Partially Disputes

   Ms Braunstein was respectful and professional towards all her colleagues in a manner which was not reciprocated. Her male team mates were shown much more leniency by the all male management team, they were neither spoken at or dealt with in the same manner.

   In Plaintiff's Deposition she states that she was asking for feedback from her crushing review and wanted it in a timely manner from her supervisor, he was disrespecting her.

   BRAUNSTEIN DEPO  PG 205  LINE 11-14
   SEE PLAINTIFF'S DECLARATION EXIBIT 19

29. Plaintiff Partially Disputes

Ms Braunstein disagrees with Mr Mariano's perspective that Defendants were respectful towards her. January 12th was four days after Plaintiff's review and she still had zero feedback from her Bar Manager, and this is after numerous disconcerting issues that Plaintiff was experiencing at her job that management was not accountable for in dealing with Ms Braunstein in the same manner as her male team mates.

At this point Ms Braunstein had already been left out of the December 2, 2014 Final 'Tip Out' Meeting. This was where the whole team, bar & servers decided by a final vote, how much the cocktail servers will 'tip out' the bar staff (service bar) for preparing their drinks. These debates got heated and were going nowhere. Mr Mariano called a meeting with Harry Ryker from Local 6, the hotel and Trade Union, to mediate. Ms Braunstein was neither notified of this meeting or allowed a final vote. She heard about it through a text she received from Mr Marini, he was asking if he was the only one showing up (Defendants Council should have a copy of this text) as both Mr Menite & Mr Rosa (scheduled off that day) were per usual running late. Eventually, they arrived and were part of the *final decision.* Plaintiff later learnt that besides the bar team, Mr Ryker, Mr Mariano, Mr Sherman, most of the servers, excluding Ms Cecila Soto, were all there.

No Management or Mr Ryker, whom Plaintiff spoke with after she arrived at work that night, helped her or cared that she did not get a vote. This was mentioned in her email(s) later on during her employment.

At this point, Ms Braunstein also had her lucrative Saturday night shift given to her as her 'set schedule' taken away by Mr Douri and given to Mr Menite against her objections and requests for why when she was doing so well in generating income. And given to a male colleague that by all accounts was at this point, January 12th, chronically late, drinking excessive amounts of alcohol on the job, threatening to get Ms Braunstein fired, and not performing at the same level as was expected as Ms Braunstein which the management turned a blind eye too.

Finally, in Mr Mariano's email on January 12th, he comments that Plaintiff should not 'cc' Ms Paradis on her emails. Ms Braunstein came to learn through Mr Hunt, the Assistant of of HR that conflicting with Mr Mariano's email, that employees can go to anyone in HR with an issue. As Hunt's deposition show's.

HUNTS DEPO  PG  23 LINE 22  - PG 24  LINE  10
SEE PLAINTIFF'S DECLARATION EXIBIT 20


30. Plaintiff Partially Disputes

Although that meeting did indeed take place, it was supposed to be with Mr Widnersson, Plaintiff and Mr Mariano, per Mr Mariano's email and prior verbal confirmation to Ms Braunstein to finally get feedback on her review. Mr Mariano contradicted that claim at his deposition, saying that he did *not invite Mr Widnersson.*

MARIANO DEPO   PG 216    LINE 14 - 22
SEE PLAINTIFF'S DECLARATION EXIBIT 21 (a-b)


31. Plaintiff Partially Disputes

Plaintiff does not agree with Mr Mariano's perspective of their iPhone recorded meeting which was supposed to included Mr Widnersson, and he is the reason she felt the need to protect herself and record why he is stating to have given her this crushing review.

The iPhone recording disputes what Mr Mariano wrote in his assessment to Mr Hunt.

Mariano:

14:38   "…Your manager must give you feedback.."
14:12-14:18  "..Professionalism ? I'm not sure where that is coming from.."
10:41-10:58  "..First, I don't even like this review, because it's either yes or no….not really a
              a fan of this thing"
12:26-12:31  …"someone should be telling you this on a daily basis, and not wait for a
              review…the manager should be giving you feedback in the moment it
              is happening"

18:03-18:15  Plaintiff "…In this house here, I am not respected" Mariano "What do you
              think we should do about it ? Do you think we should have a meeting "


This *promised meeting* which Mr Mariano mentioned *several times* during their discussion where he said he would sit down with the bar team, and the servers separately, then a third meeting altogether *never happened*  although it was schedule and cancelled a few times including on March 11 & 12, days prior to Ms Braunstein being fired on March 13th. In Mr Marianos deposition he said the he could not remember if we had that meeting.
There were six employees; the four bar team members, Mr Mariano and Mr Douri, who took over for Mr Widnersson as acting bar manager until a new one was hired, expected to attend.

Mr Mariano claims not to remember conducting a meeting to assist the bar team and figure out what is really going on, yet, this is what led to Ms Braunstein being fired from a very lucrative and secure union bartending job.

Ms Braunstein never said that the cocktail servers were "whiny" as he states and the reordered meeting will show, but, this negativity towards women appears to be a pattern with Mr Mariano. In his deposition he refers to the cocktail servers believing Ms Braunstein was 'jealous' of them, and our consulting Chef Zakarian's wife Margaret as a 'self appointed expert' back to the iPhone recording he refers to Ms Cecila Soto as 'cranky'

Ms Braunstein is proud to be a strong, intelligent, hard working, woman born and raised in the Bronx, she has managed to work her way up into the very competitive world of 'Fine Dining' in one of the most important markets, doing so by being a team player. Proving all of the above by helping her Plaza team in working all of the bar stations as she generated income and built up the clientele. The Defendants are falsely trying to discredit her, painting a picture of a 'bossy" "aggressive" "non-team player" They appear to take offense to her being a strong woman. Plaintiff has no doubt that her being such is what saved her from being sexually molested at this job, just as other women are speaking out now, including the younger female Bartender that they replaced her with Ms Sergeline. Ms Braunstein was speaking out about their sexist environment when she was an employee trying to help fix things and instead was terminated.
Mr Mariano ends this note with mentioning exactly what Ms Braunstein states about

meeting with the staff. None of these meetings happened before Ms Braunstein was fired. There are early morning emails 8am - ish- that Plaintiff and Mr Mariano were going back and forth trying to *finally set up a meeting*. Hours later arriving at work she was fired.

Mr Mariano was terminated on March 25, 2015 for under performing on this job.

MARIANO DEPO  PG 215  LINE 10-11
MARIANO DEPO  PG 216  LINE  14-22
SEE PLAINTIFF'S DECLARATION EXIBIT  22  (a-c)

32. Plaintiff Partially Disputes

Ms Braunstein already spoke about why she needed to secretly record this meeting, to this day years later does not understand why Mr Widnersson was not there as expected.

Defendants are correct that Plaintiff was repeating to Mr Mariano that she has tried to speak with her supervisor (Widnersson) that the cocktail servers were "snappish" (Plaintiff's word) she then said "to Eddie & Roberto " *proving* Plaintiff was much more concerned for her team and the two less experienced members.  And yes, it was obvious to her that Mr Widnersson favored both Ms Minard & Ms McAdams.

Both Ms Minard and Ms McAdams left the Plaza shortly after Mr Widnersson. For the record that makes only one of the original six servers hired stayed. Three women left immediately, leaving only Ms Soto, making it past the probation period.

Mr Mariano stated in his deposition that three servers, all women, left right away, that was *half* their team. Some on their own and others fired. Yet, he claims that they kept Plaintiff so long because  it is a union house and not easy to fire, plus trying to give me time to 'self reflect' (his word).

Defendants Council are trying to spin the undisputed fact that Ms Braunstein was called a *Bitch* numerous times at work and *finally* captured on a recording device. There is no excuse for anyone, especially a superior using such, derogatory and demoralizing language. Now, they are doubling down quoting what Plaintiff believes to be another case " Don't give that fucking bitch Elena, any blow dries, these fucking Latino's are going to bring this place down"

Ms Braunstein knows first hand that this language is not and should not be used to 'motivate' any female. Being called a Bitch at work, especially by your boss changes everything. The vibe will never be the same, there is no going back from that point. This is nothing that should be normalized, yet, obviously is the deep seated culture that is the Plaza Hotel. Their male employees are held in a higher regard. Mr Abrantes replaced Mr Widnersson, he is accused in the complaint index # 18 cv 01266.

Mariano iPhone:
30:03 "you are a fighter, you stuck it out, I like that"
30:43  "Cecila has an edge. I am not afraid of people like that, like you and me"
Ms Braunstein appreciates that Defendants Council had the iPhone recording

transcribed. It has a few typo's but is accurate. Except for one important *omission* on the first page, where they typed  ( "goes into further details regarding this" )
What was left out, not verbatim, but, close was where I am speaking that I can handle a lot of criticism because of my college experience,  I attended the California Institute
of the Arts, a very critical art school, and every few weeks you were required to put you work up for the class and teachers to criticize and they would rip you apart. My schooling made me learn how to handle intense critique. Other than that omission, the transcript appears pretty accurate.

MARIANO DEPO PG  130   LINE  4-14
SEE PLAINTIFF'S DECLARATION EXIBIT  23 (a-b)


33.  Undisputed


34.  Plaintiff Partially Disputes

Mr Mariano said 'I felt Tina and I had a really good relationship. She raised
some valid issues that we were able to take care of. She raised her disappointments and we were able to talk them through." Ms Braunstein wonders why Mr Mariano relied so heavily on other people's perceptions of Plaintiff which appears to contradict his own experiences with her. Especially when the Palm Court (our bar) was full of new hires who are, as a group, to all be competing for the approval of their superiors.

Plaintiff will ask the Court to read a few more sentences than Defendants to get the fuller picture of what she said during Plaintiff's deposition.


BRAUNSTEIN   DEPO  PG 86 LINE 2 - PG 87  LINE 14
MARIANO DEPO  PG 246    LINE  3-7
SEE PLAINTIFF"S DECLARATION EXIBIT  24 (a-b)


35.  Plaintiff Partially Disputes

 Once again Ms Braunstein is being accused of using foul language towards fellow staff *after* she wrote a letter informing Mr Mariano of inappropriate behavior by a few of their cocktail servers, including Ms Adams and Ms Minard whom would shortly leave their employment. Mr Mariano thanked Ms Braunstein and otherwise agreed with her
on this situation. Ms Braunstein bar guests were complaining about the behavior of
the cocktail servers and Ms Braunstein tried to get the situation under control by speaking to Mr Douri, the only Manager with authority available at the time.

Plaintiff's email was written on February 7th, Mr Mariano replied on February 19, if Plaintiff used foul language in front of Mr Douri as claimed, why is there no formal complaint against her by either management or the servers. Ms Braunstein does not use foul language at work and one again claims that, this is because employees are trying to cover up for their wrong doing.
SEE PLAINTIFF'S DECLARATION EXIBIT  25

36. Plaintiff Disputes

   Ms Braunstein was never made aware of this complaint made about her by Mr Rosa. during her time of employment.

   Yet interestingly enough on September 11, 2015 when she entered her complaint with the EEOC against the Plaza, she mentioned in her paperwork some bullet points with dates, and on *February 18*, she wrote that Roberto (Mr Rosa) was the one that was inappropriate towards her and used foul language "You Tina suck and are a terrible bartender" in front of their manager Amin (Mr Douri)

   Mr Rosa wrote his email the day *after* this, on February 19th, which he sent it to Mr Douri to forward to HR.

   Ms Braunstein first became aware of this email when she received her closed EEOC file. Once again, not given a chance to face her accuser or her manager that did nothing to protect her. Ms Braunstein wrote a note to herself, which is why she knew that date her plan was to bring this up at the bar meeting that Mr Mariano had promised.

   Ms Braunstein was growing more and more disheartened and concerned of Mr Douri's treatment of her prior to him letting Mr Rosa attack her. She wrote that email on December 25, stating he was unprofessional and misogynistic towards her. He was responsible for the scheduling and took her off of Saturday nights, giving Mr Menite her shift. Mr Douri, not only called her a Bitch, but, a Jew in derogatory terms. Plaintiff had to go through Mr Douri to request the Jewish holidays off, this seemed to offend him.

   So, February 19th the same day Ms Braunstein receives Mr Mariano's email accusing her wrongly of using foul language, towards the cocktail servers  (February 7th) here she is being verbally attacked in front of both her team member Mr Marini (Eddie) and mr Douri.

   Ironically, that evening Mr Rosa left the bar for over an hour without communicating where he was going or what was going on. When he came back upstairs with Mr Douri he was allowed to yell at Plaintiff, even encouraged to, with Mr Douri yelling at Ms Braunstein that Mr Rosa *quit* and Mr Douri talked him into staying. The time clock will show that Mr Rosa was chronically late, calling out missing scheduled shifts, on top of that register receipts will show that he did in fact work mostly service because Me Widnersson put him there. Ms Braunstein never criticized him for being stuck in the service bar, she even volunteer after the December 22nd bar meeting to work that station Tuesdays to give the less experienced a break.

   October 4, 2017 eater.com reported that the Daily News article adding another women has come forward accusing Chef Todd English of harassment, this is the location where Mr Douri is now General Manager, that a noose was found in a Jewish employee's locker. Ms Braunstein was trying to no avail to report such offenses when she was there.

   BRAUNSTEIN  DEPO  PG  222  LINE  18 - PG 223  LINE 12
   SEE PLAINTIFF'S DECLARATION   EXIBIT  26  (a-c)


37. Plaintiff Disputes

Once again, Plaintiff was not made aware of this second email during her employment, and this false complaint follows another note she wrote as the above #36 response, Mr Rosa's accusations came *after* he attacked her at the bar a *second time* in front of Mr Douri on February 20th (her note) his email was written on February 21st.

February 20th mr Rosa a 6'2" approximately 250 pound man rush Ms Braunstein 5'2" He came at her yelling and with such force she was visibly shaken and the glass she was holding broke in her hand. Mr Douri was encouraging his behavior. Once again, it appears that Mr Rosa's email was sent through the manager that was acting out towards me.

Plaintiff absolutely denies everything Mr Rosa wrote about her. She questions why if it was she that was causing his duress at work and she was fired on March 13th, why did Mr Rosa leave immediately after her, freezing his employment - not sure of the union technical term - as Mr Mariano testified that his last day was March 25th and Mr Rosa was already on ....  On March 8th, daylight savings, Mr Rosa was approximately 1 3/4 hours late as time stamps can prove.

Mr Rosa is one of the eight all male witnesses against Ms Braunstein. He is currently on leave of absence.

MARIANO DEPO PG 224 LINE 21-24
SEE PLAINTIFF'S DECLARATION EXIBIT 27


38. Undisputed

39. Plaintiff Partially Disputes

    It was Ms Braunstein's EEOC counselor, Mr Young, that was encoring her not to put 'age' ' religion' into her EEOC filing on February 8, 2016 Final Charge. Plaintiff was speaking extensively with him on both the phone & by email. She did underline age on her original filing on September 11, 2015 because she was questioning if this was a factor due to the nature of the environment at the Plaza, and how management spoke of her "experience" in a condescending tone. Ms Braunstein insisted that her final complaint that was written by Mr Young, and signed by her started out first sentence stating her name and age, she believed it was entered into the complaint that way officially. Ms Braunstein came to learn she was replaced by a woman born January 1983 fifteen years younger than her.

    Also in that original paperwork Plaintiff by mistake checked 'Nation origin" which is right next too "Religion" because she knew that to be a factor of her firing with her complaints against Mr Douri.  It was Mr Young that felt it was best to leave that out of the final charge. This was bad advice.


    SEE PLAINTIFF'S DECLARATION EXIBIT 28


40. Undisputed

41. Plaintiff Partially Disputes

    As stated above in #40. Ms Braunstein was following the advice of her official EEOC Mr Young. She was replaced by a much younger woman at the Plaza and her schedule, including her asking for the jewish holidays off were done by one of the managers Mr Douri, who was calling her a *Bitch*.

42. Undisputed

43. Plaintiff Partially Disputes

    Ms Braunstein has worked successfully for over twenty years in the restaurant business unfortunately it carries the distinction of having the most complaints reported to *both* the EEOC and the Department of Labor. She has been diligent in speaking out when her monies were being stolen, or when she witnessed any harassment of herself or others.

Ms Braunstein was terminated from Blue Hill at Stone Barns, her charge of Sexual Harassment was settled after going to trial, there is a NDA. Ms Braunstein uses the 3 star review from Mr Frank Bruni of the New York Times that mentions her by name 3 times as the second page of her resume package.

Ms Braunstein was terminated by her next employer, Telepan restaurant, when her above mentioned (BH@SB) employer found out where she was working and pressured Chef Telepan to fire her. Later on, she joined currant employees in successfully suing Teleran for back wages as the restaurant stole monies from them. Mr Kirschenbaum was their Attorney. This is when she met Mr Kirschenbaum that took over her case with Blue Hill at Stone Barns.

Ms Braunstein was terminated from City Winery along with Mr Howard & Mr Potter, shortly after they helped open that establishment, no reason was given for her termination. All three believed they were used for their vast experience, but where shortly replaced with a much younger crew. All three were over forty and went to speak with Mr Kirschenbaum, but, decided not to pursue.

Ms Braunstein was discharged from her seasonal employment at Acker Merrel & Condit a high end wine & spirits shop. Ms Braunstein was sexually molested by a male employee and filled a charge with the EEOC after learning that another recent female employee was also molested, even though her employer denied any employee has ever been attacked there. Ms Braunstein left that job with a stellar letter of recommendation that is a part of her resume package.

Ms Braunstein was terminated from Jams after approximately three or four training shifts of a yet to open restaurant, in a new hotel. Jams management informed Plaintiff that the call time (start) was going to be 5am for the Bartenders. Plaintiff voiced her concern, and questioned why she was not informed of this unusual early start during her vetting process. She was let go. Plaintiff filed with the Department of Labor. The Judge sided with Ms Braunstein, finding her to be credible, as noted in her written decision. As a side note it was only a few short months later that she went in front of the Labor Law Judge, learning that both the General Manager & Assistant General Manager already quit. Ms Braunstein believes that she dogged a bullet with that one.

Mr Mariano was terminated by the Plaza on March 25, 2015

BRAUNSTEIN DEPO  PG  108  LINE 17  PG  109  LINE 22
SEE PLAINTS DECLARATION EXIBIT  29  (a-e)

44.  Plaintiff Partially Disputes

I, Tina Michelle Braunstein have always been truthful and responsible in bringing charges against my former employers and thus far have been victorious. I hope to show this Court my credibility in bringing my claims against the Plaza Hotel, et al. This is an establishment that has a perverse and pervasive system in place to harm it's female employees, reflected in the fact that there are now multiple woman coming forward, including the younger female Bartender that replaced me. August 2017 the news media picked up on this, calling it 'Rape Culture' at the Plaza Hotel. I am telling the truth and hope to bring my case to a Jury.

June 4, 2018

Tina Michelle Braunstein

LEONARD H. NEWBURGER
NOTARY PUBLIC,  State of New York
No. 03-8127740
Qualified in Bronx County
Commission Expires Sept. 30, 2019